IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PLEWINSKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:07-CV-03529 |
| VS. | § | |
| | § | |
| LUBY'S, INC. D/B/A LUBY'S, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## DEFENDANT LUBY'S, INC'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Luby's, Inc. ("Luby's") moves for summary judgment under Federal Rule of Civil Procedure 56 as follows:

## I.   INTRODUCTION

This is a putative collective action lawsuit filed under the Federal Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 216(b).  Plaintiff, a former Luby's server, alleges that Luby's has willfully violated the minimum wage provisions of the FSLA by requiring him, and other similarly situated employees, to contribute a portion of collected tips to a tip pool from which Luby's distributes tips to other employees holding the job title "service attendant." Plaintiff requests that the Court allow conditional certification of the putative class, allowing notice to all current and former servers employed by Luby's in the past three years. Luby's challenges the appropriateness of conditional certification in this matter as Plaintiff fails to meet the threshold showing of a FLSA violation in this case.  The parties have agreed that the issue in this case is narrow and may be decided by this Court as a matter of law. Luby's contends that its

"service attendants" are properly a part of the tip pool as their duties are equivalent to the duties of bus boys and bus girls and this job classification has been expressly included as a classification appropriately a part of a tip pooling arrangement.  Plaintiff seems to contend that the duties of a service attendant do not place them within the classification of a busser.  Plaintiff, however, can point to nothing within the duties of a service attendant which would remove them from appropriately falling within the classification of a busser. Therefore, Plaintiff should be denied conditional certification, and further, all claims of Plaintiff, and others consenting to inclusion in this matter, should be dismissed in their entirety.

## II.  STATEMENT OF ISSUES

The issues presented in this Motion for Summary Judgment are (1) whether Luby's service attendants are employees who customarily and regularly receive tips under Section 203(m) of the FLSA and (2) whether Plaintiff can establish a violation of the FLSA sufficient to support a *prima facie* wage claim, allow for conditional certification and avoid dismissal of all claims.

## III.    SUMMARY JUDGMENT EVIDENCE

Luby's presents the following summary judgment evidence:

1.      Exhibit A – Field Operations Handbook

2.      Exhibit B – Affidavit and Curriculum Vitae of Stephen Barth

3.      Exhibit C – Luby's Tip Agreement

4.      Exhibit D – Job Description of Service Attendants

5.      Exhibit E –  Waitstaff Training Materials "Bus Carts & Bus Stations"

## IV.   FACTS

Luby's operates a chain of cafeterias across the southern United States, primarily in Texas.  As a cafeteria, Luby's customers must walk through a serving line and choose their food from various steam and serving tables before being seated in the dining area.  Depending on the given cafeteria design and layout, payment for the food either takes place at the end of the serving line, or following the meal at a cashier station.

In the front of the cafeteria, Luby's employs wait staff, also known as, servers to meet the needs of its guests within the dining room area.  Luby's wait staff perform many, though not all, of the traditional functions of waiters, including greeting customers at the beginning of their meal, refilling their drinks, and bringing them various condiments and other requested items, such as additional utensils, as needed.  The procedure for bussing tables in the dining room is a bit different from what is used in a conventional cafeteria. Luby's employs a pre-bussing system, where the wait staff are responsible for "pre-bussing" their tables throughout the meal as items are no longer needed by the guest. *See* Ex. E. As these items are removed they will be delivered directly to the "dish return" room or to one of the "bus stations," located on the dining room floor, for later transport to the dish return room. *See* Ex. D and E.  Once dishes are brought to the dish return room or bus station, Luby's employs "service attendants" to provide a variety of functions. The primary function of the service attendant is to ensure the movement of dirty dishes from the dining area or dish return room to the dish room. These dirty dishes are gathered by the service attendant by either: (1) entering the dining area and removing the dishes from the bus stations, or (2)  removing them from shelves in the dish return room where they have been placed the wait staff. The service attendants then place these dishes in containers and push them through a window opening connecting the dish return room. *See* Ex. B, Affidavit of Stephen

Barth. Besides maintaining the bus stations in the dining area and maintaining the flow of dishes though the dish return room into the dish room throughout the shift, service attendants also have a general responsibility to assist wait staff with bussing and cleaning of tables, chairs and floors. This includes pre-bussing when requested and bussing tables after the guest leaves. Bussing the tables includes clearing all used items, cleaning and sanitizing chairs, high chairs booster chairs, the surrounding floor, and replacing table top items in a uniform fashion. Ex. B, D and E They also assist the wait staff by the removal of  bus carts, depositing full tubs of dishes and utensils in the dish return room, returning empty carts to bus stations, rolling silverware as needed, and assisting in ensuring a clean environment by routinely monitoring the dining room floor and guest rest rooms. *Id.* Luby's service attendants, of course, perform other tasks to assist in any way that is conducive to the efficient operation of  the front of the house.

According to Luby's policy, the wait staff and service attendants are paid $2.13 per hour, plus tips in accordance with a tip pool policy.  Ex. C.  In accordance with Luby's tip pool policy, wait staff pay 15% of their tips into a tip pool. Luby's only maintains one job category that receives tip pool dollars, that being service attendants. It is important to point out that Plaintiff has not alleged that he was paid less than minimum wage on any other basis than his involvement in a tip pooling arrangement with Luby's service attendants.

Plaintiff has filed consents on behalf of six other former or current Luby's servers, Donald Lineberry, Ruairi Dalton, Juan Marroquin,[1] Fernando De La Garza, Angelita Martinez and William E. Hope.  Each of these employees previously worked or currently works as wait staff employee at one of four different Luby's restaurants: (1) 8176 North Mo-Pac Expressway in Austin, Texas; (2) 12121 Westheimer Road in Houston, Texas; (3) 108 West Greens Road in

---

[1]   Defendant believes that Juan Marroquin and "John Marroquin" listed in Plaintiff's Initial Disclosures, are the same person.

Houston, Texas; and (4) 13400 San Pedro Avenue, San Antonio, Texas.

## V.      ARGUMENT

### 1.      Federal Labor Standards Act and Tip Credits

To establish a *prima facie* wage claim under the FLSA, Plaintiff must allege and prove

(1) the existence of an employment relationship, (2) FLSA coverage, and (3) a violation of the

FLSA.  *See, e.g., Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986).  Thus, Plaintiff must

show that Luby's violated the minimum wage provisions of the FSLA by creating an improper

tip pool that includes service attendants.

### A.      History

Congress enacted the FLSA in 1938 in order to establish a federal minimum wage and

require employers to pay overtime to certain eligible employees.  The Act did not include any

reference to tips until 1966 when Congress amended subsection 203(m) to allow employers to

claim a "credit" toward the minimum wage due to "tipped employees."  Sep. 23, 1966 Pub.L. 89-

601, title I, § 101(a), 80 Stat, 830.  The same law also added subsection 203(t) to define a "tipped

employee."  *Id.*

In 1974, Congress addressed tip pooling for the first time, amending subsection 203(m)

to state that a "tipped employee" must retain all tips received by the employee "except that

[subsection 203(m)] shall not be construed to prohibit the pooling of tips among employees who

customarily and regularly receive tips."  Apr. 8, 1974, Pub L. 93-259, Title II, § 13(e), 88 Stat.

64.

### B.      Tip Credits

Under the FLSA, tips of "tipped employees" may be combined with the hourly

wage paid directly by the employer, allowing restaurants to pay a "sub-minimum wage."  WH

Admin. Op. –468 (Sep. 5, 1978); 29 U.S.C. § 203(m).  The difference between the minimum

wage and the amount an employee must be paid directly by the employer is commonly referred

to as a "tip credit."  *See* 29 C.F.R. §§ 531.59; 531.54.  The Fair Labor Standards Act (FLSA)

allows an employer to take a credit toward the minimum wage due its tipped employees on

account of the tips received by those employees in the course of their work. For an employer to

take a tip credit, the employee must (1) be an employee engaged in an occupation wherein he or

she *customarily and regularly* receives more than $30 dollars a month in tips; (2) be informed

about the tip credit to be applied toward his or her wages; and (3) retain all the tips he or she

receives, except for tips contributed to other customarily and regularly "tipped employees" via an

appropriate tip pooling arrangement. See 29 U.S.C. § 203(m) and (t).

Prior to August of 1996, the amount of this tip credit was set at an amount not to exceed

fifty percent of the minimum wage in effect or $2.125 [Based on a minimum wage of $4.25 per

hour at that time]. *Id.* However, in the August of 1996 amendment to the statute, the focus of the

statute was taken off the tip credit and placed on the tip wage to be paid by the employer. The

statute set the wage amount to be paid by the employer to tipped employees at $2.125 per hour

and allowed a tip credit to be taken in an amount equal to the minimum wage in effect less the

established tip wage of $2.125 per hour. The effect of this change is that the allowed tip credit

will increase with each increase of the minimum wage, while the amount paid by the employer

remains $2.125 per hour. Currently, therefore, with the recent increase in the minimum wage, the

amount of tip credit allowed employers is $3.725 per hour, and will increase on July 24, 2008, to

$4.425 and again increase to $5.125 on July 24, 2009.   See 29 U.S.C. § 206(a)(1).

**C.     Tip Pooling Among "Employees who Customarily and Regularly Receive Tips" Does not Require Employees  to Receive Tips Directly**

As stated, the requirement that an employee retain all tips does not preclude the pooling

of tips among "employees who customarily and regularly receive tips." And it is well established

that an employee need not receive tips directly from customers to participate in a tip pool, but an

employee must merely customarily and regularly participate in a tip-pooling arrangement under

which he or she receives tips given to other employees by customers. *Davis v. B & S, Inc.*, 38

F.Supp.2d 707 (N.D. Ind. 1998). Thus, this may include bellhops, counter personnel, bus boys

and girls, service bartenders and other employees who offer support to directly tipped employees

such as waiters. *See* Field Operations Handbook § 30d04(b) attached as Exhibit A. Neither

subsection 203(m) nor the regulations require that employees receive tips directly from guests to

be included in a mandatory tip pool.  To the contrary, "[w]here employees practice tip splitting,

as where waiters give a portion of their tips to busboys, the amounts retained by the waiters and

those given the busboys are considered tips of the individuals who retain them," applying

subsections 203(m) and 203(t). 29 C.F.R. § 531.54; *See also* Field Operations Handbook, §

30d04(a).

       **D.**       **Tip Pooling Among "Employees who Customarily and Regularly Receive Tips" does not Require Employees  to Interact with Customers**

Under the FLSA and its interpretive case law, employees who have no customer

interaction at all may still be employees who customarily and regularly receive tips and thus may

be included in a mandatory tip pool.  *See* Senate Report 93-690.  "It is not required that all

employees who share in tips must themselves receive tips from customers.  The amounts retained

by the employees who actually receive the tips, and those given to other pool participants are

considered the tips of the individuals who retain them."  DOL Handbook § 30d04(a).  Such

employees include bus boys and service bartenders. *Id.*

Similarly, in *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663 (N.D. Tex. 2007), the issue was whether "expediters" were properly included within a tip pool even though they lacked customer interaction.  The court observed:

> Plaintiff's main contention seems to be that no service personnel other than waiters and busboys may share in the tip pool and that expediters do not have enough direct contact with customers to allow for sharing in the tip pool. As noted in other courts, busboys do not necessarily interact directly with restaurant patrons either because a busboy's duties normally do not come into play until the patrons have concluded there dining experience. Nor does a busboy normally directly receive tips from customers or directly interact with them; yet, busboys are still considered as employees who customarily and regularly receive tips.

*Id.* at 670-71.  Citing 29 U.S.C. § 203(m), the court further observed, "Nothing in the statute specifically requires that an employee who shares in a tip pool interact directly with customers."

*Id.* at 671 n .5.

## 2.     Luby's Service Attendants are Employees Who "Customarily and Regularly Receive Tips" and Are Therefore, Appropriately a Part of the Tip Pool

As mentioned above, the FLSA requires that employees who participate in a mandatory tip pool be employees who "customarily and regularly receive tips."  *See* 29 U.S.C. § 203(m). Service attendants meet the requirements of Section 203(m) because all of their duties fall within the duties of a busser and the Department of Labor has determined, and the courts universally accept, that bussers may legitimately participate in a tip pool. *See* Field Operations Handbook § 30d04.

### A.     Bussers are Employees who "Customarily and Regularly Receive Tips" under Section 203(m)

The law is clear that busboys and busgirls are considered employees who customarily and regularly receive tips.  29 U.S.C. § 203(m); *Marshall v. Krystal Co.*, 467 F. Supp 9, 13 (E.D. Tenn. 1978) (finding that waiters, bus persons, and bartenders were permitted to derive their tip income from a tip pool); 29 C.F.R. § 531.54 (explicitly mentioning busboys as an example of

restaurant employees who may receive tips from tip shares by servers); Field Operations Handbook § 30d04 (Under Tippooling. Subsection (a) "The following occupations have been recognized as falling within the eligible category: … (4) busboys/girls (server helpers)…"); DOL Wage and Hour Division Opinion Letter, dated Nov. 4, 1997, 1997 WL 998047 ("It is customary for waiters/waitresses to receive gratuities and share them with the busboys/busgirls" . . . "waiters, bellhops, waitresses, countermen, busboys, and service bartenders are among those who may participate in a tip pool"). Waiters, bartenders, hosts and maître d's are also considered employees who customarily and regularly receive tips. *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 301 (6th Cir. 1998); *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799, 8000-01 (E.D. Ark. 1990).

**B.    Service Attendants have Duties Equivalent to those Traditionally associated with Bussers**

In the restaurant industry, the following duties are traditionally assigned to bussers: (1) Generally facilitate the food service operation; (2) clear and clean tables; carry, sort, scrape and stack dirty dishes and silver ware; (3) delivery of dishes and silver to the dishwashing area; (4) replace soiled table linens, silverware, glassware, and dishes; (5) supply service bar with food, and serve water, butter, and coffee, etc. to patrons. Specific tasks normally include "Scrape and stack dirty dishes, and carry dishes and other tableware to kitchens for cleaning. *See* Affidavit of Stephen Barth.

Although Luby's service attendants are not called "bussers,[2]" they have the duties of a busser, according to the tasks described above.[3]   *See* Affidavit of Stephen Barth.   In fact, Plaintiff can point to no duty performed by Luby's service attendants that are not  within those

---

[2]    It is important to note that Luby's does not employ any category of employees known as "bussers."
[3]    Arguably, service attendants also generally have some of the functions of waiters, who are also considered by the Department of Labor to be "customarily and regularly tipped employees."

traditionally associated with a busser or that would exclude them from being characterized as employees with duties equivalent to those of a busser.  As mentioned above, aside from emptying bus stations and maintaining the dish return room throughout the meal, service attendants also have a general responsibility to assist wait staff with bussing and cleaning of tables, chairs and floors. This includes pre-bussing when requested and bussing tables after the guest leaves. Bussing the tables includes clearing all used items, cleaning and sanitizing chairs, high chairs, booster chairs, the surrounding floor, and replacing table top items in a uniform fashion. They also assist the wait staff by the removal of  bus carts, depositing full tubs of dishes and utensils in the dish return room, returning empty carts to bus stations, rolling silverware as needed, assisting in ensuring a clean environment by routinely monitoring the dining room floor and guest rest rooms, and generally assisting the wait staff to enhance the guest's dining experience.  Like traditional bussers, service attendants have very little interaction, if any, with the kitchen staff. Instead, service attendants primarily interact with servers.

Given the cafeteria styled environment of a Luby's restaurant, Luby's wait staff's duties do not include all of the duties typically ascribed to waiters. Luby's waiters do not carry food to tables unless requested. They do not take the customer's order at the beginning of the meal. They do no even handle the customer's final payment following the meal. Because Luby's wait staff's duties are modified in the cafeteria setting, so too are the duties of the service attendant/busser in this setting. All of the duties performed by a waiter at Luby's are within the duties traditionally associated with waiters, and likewise, all of the duties of Luby's bussers are within the duties traditionally associated with busboys and busgirls. Luby's waiters do not perform each and every duty that may be ascribed to a traditional waiter, and likewise, Luby's service attendants do not perform each and every duty that may be ascribed to a traditional busser. However, for purposes

of the FLSA, their duties fall well within those traditionally held by waiters and bussers, and therefore, by employees who customarily and regularly receive tips as a matter of law.

**3.      The Court Should Determine Whether Service Attendants are Employees Who Customarily and Regularly Receive Tips Granting Conditional Certification and Effecting Class-wide Notice.**

*Lentz v. Spanky's Restaurant II, Inc.*, a putative collective action filed in the Northern District of Texas, involved similar improper tip pool claims targeted at "expediters," a category of employees who assisted Spanky's wait staff in providing efficient and prompt customer service.  491 F. Supp.2d 663 (N.D. Tex. 2007).  The *Spanky's* court denied plaintiff's motion for notice to potential class members because, among other reasons, there was no clear precedent in any circuit defining expediters as employees who did not customarily and regularly receive tips. *Id.* at 671.  Thus, the determination of whether an expediter was appropriately included in a tip pool was a matter *res nova* for the district court.  As such, the Court determined that it would be improper to require Spanky's to provide the plaintiff "with detailed information on all prior and current employees and to request the imprimatur of this Court on a proposed notice to potential class members under the circumstances." *Id.*

Similarly, here, there is no precedent in this circuit or any other circuit and there are no DOL opinion letters, FLSA guidelines, or any other sources defining or otherwise establishing service attendants [who are effectively bussers] as employees who do not customarily and regularly receive tips.  In accordance with *Lentz v. Spanky's Restaurant II, Inc.*, the Court should not order notice to potential class members until it has first made a determination about whether Luby's has created an improper tip pool under the FLSA by allowing service attendants to share in tips.  Luby's believes this issue is ripe for a determination and, therefore, urges the Court to decide whether service attendants are employees who are "customarily and regularly tipped"

under Section 203(m) of the FLSA before considering notice to potential class members.

**4.      Plaintiff Cannot Establish his *Prima Facie* Wage Claim under the FLSA**

As established above, service attendants have the functions of bussers and, as such, are "customarily and regularly tipped employees" under Section 203(m).  Therefore, under the FLSA, Luby's mandatory tip pool policy, requiring its waitstaff to pool their tips for distribution to service attendants, is lawful under the FLSA.  Because Luby's service attendants are appropriately included in a tip pool, Plaintiff cannot establish his *prima facie* wage claim under the FLSA and Luby's is entitled to summary judgment as a matter of law.

WHEREFORE, Defendant Luby's, Inc. respectfully requests that this Court grant its Motion for Summary Judgment, dismiss all claims asserted by Plaintiff with prejudice and tax costs against Plaintiff.  Defendant requests any further relief to which it is entitled.


Respectfully submitted,

GORDON & REES, LLP


*s/Terrence B. Robinson*

Terrence Robinson, Attorney-in-Charge
State Bar No. 17112900, Fed. I.D. No. 14218
Heidi Gumienny
State Bar No. 24036696, Fed. I.D. No. 36890
GORDON & REES, LLP
1900 West Loop South, Suit 1000
Houston, Texas 77027
Telephone: (713) 961-3366
Facsimile: (713) 961-3938
Email: trobinson@gordonrees.com
Email: hgumienny@gordonrees.com

ATTORNEYS FOR DEFENDANT
LUBY'S, INC. D/B/A LUBY'S

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion was served upon the attorneys of record for Plaintiff, via electronic delivery, on this 4TH day of April, 2008.

*s/Terrence B. Robinson*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PLEWINSKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:07-CV-03529 |
| VS. | § | |
| | § | |
| LUBY'S, INC. D/B/A LUBY'S, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day, came on to be considered Defendant Luby's, Inc.'s Motion for Summary Judgment. Having considered the merits of the Motion and the papers on file herein, the Court is of the opinion that said Motion should be GRANTED.

Accordingly, it is ORDERED, ADJUDGED and DECREED Luby's Motion for Summary Judgment is hereby GRANTED and that Plaintiff take nothing in this case.

## THIS IS A FINAL JUDGMENT.

Signed this _____day of _____, 2008.

_____
UNITED STATES DISTRICT JUDGE