### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PLEWINSKI, on Behalf of Himself and Others Similarly Situated, | ] ] ] | |
| *Plaintiff*, | ] ] | |
| v. | ] ] | CIVIL ACTION NO. 4:07-cv-3529 |
| LUBY'S, INC. D/B/A LUBY'S, | ] ] | JURY TRIAL DEMANDED |
| *Defendant*. | ] ] ] | |

## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE TO POTENTIAL COLLECTIVE CLASS MEMBERS

### I. SUMMARY

Daniel Plewinski (Plewinski) brought this collective action against Luby's, Inc. d/b/a Luby's (Luby's) because Luby's pays its waiters less than the minimum wage required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* While Luby's may claim it is entitled to a "tip credit" against its minimum wage obligations, Luby's cannot claim a tip credit because its waiters are not permitted to retain all their tips. 29 U.S.C. § 203(m). Instead, Luby's improperly requires its waiters to give a portion of their tips to other employees.

Because Luby's applies this improper policy to all its waiters, Plewinski and other Luby's waiters are entitled to the full minimum wage for each hour worked. In order to allow the employees similarly situated to Plewinski to recover their unpaid minimum

wages, the Court should conditionally certify this action as a collective action and approve the issuance of notice of this action to Luby's wait staff.[1]

## II. BACKGROUND

### A.     Factual Background

Luby's operates several cafeteria-style restaurants.  Plewinski was a waiter in one of Luby's' Houston locations from approximately March 2006 to December 2006. (Plewinski Dec., ¶ 1).  Fernando De la Garza worked as a waiter for Luby's in Austin from approximately August 2007 to October 2007.  (De La Garza  Dec., ¶ 2).  William Hope is a waiter for Luby's in San Antonio.  (Hope Dec., ¶ 2).  Donald R. Lineberry worked as a waiter for Luby's in Austin from August 2007 to November 2007. (Lineberry Dec., ¶ 2)(De La Garza, Hope, Lineberry and Plewinski referred to hereinafter collectively as the Waiters).

Luby's' waiters greet customers, refill drinks, bring condiments, suggest dessert options, make sure the dining area is tidy and, generally, ensure that the guests have a pleasurable dining experience.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 4; Lineberry Dec., ¶ 4; Plewinski Dec., ¶ 3).  Because Luby's does not employ busboys, waiters also bus the tables in their section and deliver the dirty dishes to the kitchen area to be washed.  (De La Garza  Dec., ¶ 3 and Wait Staff Job Description attached to De La Garza Dec. as Exhibit 1; Hope Dec., ¶ 4; Lineberry Dec., ¶ 4; Plewinski Dec., ¶ 4).

---

[1]       In support of this motion Plewinski submits, as Exhibits 1 through 4 respectively, the declarations of Fernando De la Garza (cited herein as De la Garza Dec.), William Hope (cited herein as Hope Dec.), Donald R. Lineberry (cited herein as Lineberry Dec.) and Daniel Plewinski (cited herein as Plewinski Dec.).

Luby's does not pay its waiters the full minimum wage for each hour worked.[2] (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 2; Lineberry Dec.,  ¶ 2; Plewinski Dec., ¶ 7). Rather, Luby's pays its waiters a direct wage of $2.13 per hour.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 2; Lineberry Dec.,  ¶ 2; Plewinski Dec., ¶ 7).   In addition to this direct wage, the waiters receive tips from Luby's' customers.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 8; Lineberry Dec., ¶ 7; Plewinski Dec., ¶ 7).  Luby's takes a "tip credit" for the difference between the direct wage it pays its waiters and the full minimum wage. (Plewinski Dec., ¶ 7).

Luby's, however, does not allow its waiters to keep all of the tips they earn.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 8).  Instead, Luby's withholds a portion (15%) of each waiter's tips at the end of each shift.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 8).  Luby's pools the amounts it withholds from its waiters' tips (the tip pool) and then distributes the tip pool to kitchen workers.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8).

The kitchen workers only work in the kitchen area cleaning dishes.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 5; Lineberry Dec., ¶ 5; Plewinski Dec., ¶ 5).  The kitchen workers are never out in the main area of the restaurant while they were working and do not interact with the restaurant customers.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 5; Lineberry Dec., ¶ 5; Plewinski Dec., ¶ 5). Not surprisingly, then, the kitchen workers do not receive tips from the restaurant customers.  (Hope Dec., ¶ 5; Lineberry Dec., ¶ 5; Plewinski Dec., ¶ 5).

---

[2]      Prior to July 24, 2007, the federal minimum wage was $5.15 per hour.  As of July 24, 2007, the federal minimum wage increased to $5.85 per hour.

The kitchen workers wear different attire than the waiters.  (Plewinski Dec., ¶ 6).  For example, the kitchen workers wear full body aprons, black pants and shirts.  (Plewinski Dec., ¶ 6).  This uniform is consistent with their status as dishwashers and clean-up workers.   In contrast, the waiters wear a uniform consistent with customer interaction:  blue shirts, blue dress pants, a small server's apron and a name tag.  (Plewinski Dec., ¶ 6).

All of Luby's' waiters have the same or similar job duties.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 4; Lineberry Dec.,  ¶ 4; Plewinski Dec., ¶ 3).  Among the common duties shared by Luby's' waiters is bussing the tables in the waiters' section.   (De La Garza Dec., ¶ 3 and Wait Staff Job Description attached to De La Garza Dec. as Exhibit 1; Hope Dec., ¶ 4; Lineberry Dec., ¶ 4; Plewinski Dec., ¶ 4).   Further, Luby's pays all of its waiters a direct wage of $2.13 per hour.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 2; Lineberry Dec.,  ¶ 2; Plewinski Dec., ¶ 7).

All Luby's waiters earn tips paid by the restaurant customers.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 8; Lineberry Dec., ¶ 7; Plewinski Dec., ¶ 7).  Luby's uniformly withholds 15% of the tips all of its waiters at the end of each shift.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 8).  Luby's distributed the amounts it collected from its waiters to kitchen attendants.  (De La Garza  Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8).  Thus, the waiters' job duties, compensation structure and mandatory tip pooling do not vary by geography.  (*See* De La Garza  Dec., ¶ 2 (worked in Austin); Hope Dec., ¶ 2 (currently works in San Antonio); Lineberry Dec., ¶ 2 (worked in Austin); Plewinski Dec., ¶ 1 (worked in Houston)).  In other words, all of Luby's' waiters are "similarly situated."

### B.      Legal Background

The FLSA requires employers to pay employees at a minimum hourly rate – currently $5.85 - for each hour worked.  *See* 29 U.S.C. § 206(a).[3]  A partial exception to this rule exists for "tipped employees."  29 U.S.C. § 203(m) & § 203(t).  An employer can pay tipped employees as little as $2.13 per hour provided certain conditions are met. *Id.* at § 203(m).  However, an employer must comply with the requirements of Section 203(m) "precisely" in order to claim a tip credit.  *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977); *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334 *1 (S.D.Tex. 2006)(the requirements of Section 203(m) are strictly construed).

Among other things, an employer must ensure the employees make at least the minimum wage when the wages paid by the employer and the tips are combined.  29 U.S.C. § 203(m).  The employer must also inform the employees of the tip credit.  *Id.*  In addition, the employees must keep all the tips they receive other than those contributed to a valid tip pool.  *Id.*  If the employees are required to share their tips with employees who do not customarily and regularly receive tips, the employer cannot claim any tip credit. *See, e.g., Myers v. Copper Cellar Corp.*, 192 F.3d 546, n. 4 (6th Cir. 1999); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. March 30, 2006); *Ayers v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308-09 (S.D.N.Y. 1998); *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98 (E.D. Tenn. 1979).

"[T]he employer bears the burden of showing the applicability of the tipped employee provisions."  *Smith v. Noso, Inc.*, 2007 WL 2254531, at *4 (M.D. Fla. Aug. 3, 2007) (*citing Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)

---

[3]       Prior to July 24, 2007, the minimum wage was $5.15 per hour.  *See* Fair Minimum Wage Act of 2007, Pub. L. 11-28 (May 25, 2007) & 29 U.S.C. § 206(a) (2006).

("On May 1, 1974, the [FLSA] was amended to place the burden of proving the amount of tips received on the employer for purposes of allowing the ... tip credit."); *see also Kilgore v. Outback Steakhouses of Fla., Inc*., 160 F.3d 294, 298 (6th Cir. 1998) (employer bears burden of proof); *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (same)).  "Unless the employer satisfies its burden of showing the applicability of the tip credit, the employees are 'entitled to the full minimum wage for every hour worked.'" *Noso, Inc.,* 2007 WL 2254531, at *4 (*citing Barcellona*, 597 F.2d at 467).[4]

Under the law, Luby's can only require its waiters to contribute to a tip pool from which other customarily tipped employees draw.  29 U.S.C. § 203(m); *Myers*, 192 F.3d at 551.  The kitchen workers to whom Luby's distributed the tip pool, however, were not eligible to participate in any tip pool.  *Id.*  Because Luby's' kitchen workers were not eligible to participate in any tip pool, Luby's violated the tip credit requirements of Section 3(m).  Therefore, Luby's' failure to pay the Waiters a direct wage of at least $5.15 ($5.85 from July 24, 2007 forward) for all hours worked violated the minimum wage provisions of the FLSA.

## IV. ARGUMENT

### A.    THE FLSA AUTHORIZES COLLECTIVE ACTIONS

The FLSA gives employees have the right to bring an action "for and in behalf of …themselves and other employees similarly situated."  29 U.S.C. § 216(b).   Actions

---

[4]     *See also, Myers*, 192 F.3d at n. 4 (because Section 203(m) is an exception to the minimum wage requirements, court "narrowly construe" its provisions in the employee's favor" and the employer bears the burden of proof); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 474 (11th Cir. 1982) ("the employer has the burden of showing that he is entitled to the credits claimed under s 3(m) of the FLSA"); *Brennan v. Veterans Cleaning Service, Inc*., 482 F.2d 1362, 1369 (5th Cir. 1973) (describing Section 203(m) as an "exception" to the FLSA's minimum wage requirements);  *Reich v. Priba Corp.*, 890 F.Supp. 586, 595-96 (N.D. Tex. 1995) (employer "bears the burden of proof, by a preponderance of the evidence, that a valid tip pool agreement existed at the club between regularly and customarily tipped employees.").

pursued in such a representative capacity are referred to as "collective actions." Federal courts in Texas have a long tradition of using the collective action procedure to protect employees who are denied the wages owed under the law. *See, e.g., Riojas v. Seal Produce, Inc.* 82. F.R.D. 613, 619 (S.D. Tex. 1979)(since the FLSA was "meant to aid injured parties," it is "only sensible that procedures facilitating this intent [such as providing notice to potential class members] would be favored.").

Perhaps even more importantly, the Supreme Court has expressly held that courts may implement the collective action procedure by facilitating the issuance of notice to potential class members. *Hoffman-LaRoche Inc. v. Sperling,*  493 U.S. 165 (1989). Commenting favorably upon collective actions, the Supreme Court noted:

> A collective action allows…plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged…activity.

*Sperling*, 493 U.S. at 170.   However, these benefits depend upon the potential class members' receipt of a notice which is "timely, accurate and informative."  *Blake v. Colonial Savings, FA*, 2004 WL 1925535 (S.D. Tex. August 16, 2004)(J. Harmon)(*citing Sperling,* at 172).

### B.    THE LEGAL STANDARD (SIMILARLY SITUATED).

The Fifth Circuit has identified two different procedures used by courts to determine whether to facilitate notice.  *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213 (5th Cir. 1995); *Kaluom v. Stolt Offshore, Inc.*, 474 F.Supp.2d 866, 870-71 (S.D.Tex. 2007)(Kent, J.).  The first approach – the *Shushan* method – is premised upon a class action filed under Federal Rule of Civil Procedure 23 and espouses the view that the court should look to the familiar concepts of "numerosity," "commonality," "typicality"

and "adequacy of representation" to determine whether a class should be certified. *Mooney*, 54 F.3d at 1214 (*citing Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990)).  However, because the time consuming Rule 23 mechanism is antithetical to the FLSA's policy that potential plaintiffs receive timely notice, "the *Shushan* approach is unjustifiably punitive."  *Kaluom*, 474 F.Supp.2d at 872.

The "two-step" method – involves a dual step analysis of the FLSA § 16(b)'s "similarly situated" requirement.  *Mooney,* 54 F.3d at 1214; *Kaluom*, 474 F.Supp.2d at 871.  The two-steps consist of a lenient "conditional certification" decision, followed by a more rigorous analysis of the similarly situated issue.  *Mooney,* 54 F.3d at 1214; *Kaluom*, 474 F.Supp.2d at 871.

Instead, the vast majority of courts apply the "two-step" method.  *See, e.g., Theissen,* 267 F.3d at 1105; *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F. 2d 1208, 1219 (11th Cir. 2001).  In particular, courts in the Fifth Circuit favor the two-step approach. *Kaluom*, 474 F.Supp.2d at 871; *Barnett v. Countrywide Credit Industries, Inc.* 2002 WL 1023161, at *2 (N.D. Tex. May 21, 2002)(the two-step method is "the prevailing test among the federal courts…").

### C.    WHEN ARE POTENTIAL CLASS MEMBERS "SIMILARLY SITUATED"?

"Similarly situated," in § 216(b) parlance, does not mean "identically situated." *See Riojas*, 82 F.R.D. at 616; see also, *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947 (M.D.Fla. 1994).  Therefore, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."  *Donohue v. Francis Services, Inc.*, 2004 WL 1161366, *2 (E.D.La. May 24, 2004).

Instead, a FLSA collective class determination is appropriate when there is "a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Crain v. Helmrich & Payne Int'l Drilling Co.*, 1992 WL 91946, *2 (E.D.La. April 16, 1992)(certifying class of workers who were required to perform work prior to and after their paid shifts).  Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id.*; *see also*, *Wyatt v. Pride Offshore, Inc.*, 1996 WL 509654, *2 (E.D.La. Sept. 6, 1996).  In making this determination, "the district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

To impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and, thereby, would serve to undermine the "broad remedial goals" of the FLSA.  *Garner v. G.D. Searle*, 802 F.Supp. 418, 422 (M.D. Ala. 1991);  *Sperling*, 118 F.R.D. at 407, aff'd, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989)("Notice to absent class members need not await a conclusive finding of 'similar situations.'").  Instead, the record need only be "sufficiently developed . . . to allow court-facilitated notice" based upon "substantial allegations." *Id.*; *see also*, *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991), or "some factual support." *Belcher v. Shoney's Inc.*, 927 F.Supp. 249, 251 (M.D. Tenn. 1996).  Thus, the court's decision is usually made "using a fairly lenient standard" and is "based only on

the pleadings and any affidavits which have been submitted." *Mooney*, 54 F. 3d at 1214.

Evaluation under the lenient "similarly situated" standard "typically results in

'conditional certification' of a representative class" and the issuance of a court approved

notice. *Id*; *Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601,

606 (S.D.Tex. 2005)(Harmon, J.)(citing *Mooney*, 54 F. 3d at 1214).

Allowing early notice and full participation by the opt-ins, "assures that the full

'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v.

Hoffmann-LaRoche Inc.*, 118 F.R.D. at 406.  Once the opt-in period is complete, the

Court will have the benefit of knowing the actual makeup of the collective action – rather

than making a decision based on a hypothetical class.  *Convergys*, 370 F.Supp.2d at 605

("[T]he two-step process has the advantage of informing the original parties and the court

of the number and identity of persons desiring to participate in the suit. With that

information, analysis may be performed on the viability of the class and its

representatives.").  Thus, early notice will help the court to manage the case because it

can "ascertain the contours of the action at the outset." *Sperling,* 493 U.S. at 172-73.

### D. THE ISSUANCE OF NOTICE IS PROPER IN THIS CASE BECAUSE THE POTENTIAL CLASS MEMBERS ARE SIMILARLY SITUATED IN TERMS OF JOB DUTIES AND PAY PROVISIONS.

In this case, Plewinski's complaint provides substantial allegations detailing

Luby's' illegal payment scheme.  *See* Doc. No. 1.  Plewinski describes Luby's' illegal tip

pool and explains why these actions constitute violations of the FLSA. Given the detailed

nature of the complaint, this Court would be justified in approving notice "on the basis of

the pleadings alone." *Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*, 2006 WL 1007542, *1 (S.D.Tex. April 17, 2006)(Ellison, J.)(emphasis added; citations omitted).[5]

Nonetheless, Plewinski provides substantial evidentiary support for this motion. (*See* Exhibits 1-4). The attached declarations and documentary evidence well establish that other waiters wish to "opt-in" and that they are "similarly situated" to Plewinski. Plewinski readily meets the lenient standard for court facilitation of a FLSA collective action. *See, e.g., Foraker v. Highpoint Southwest, Servs., L.P.*, 2006 WL 2585047, at *3 (S.D.Tex. 2006)(citations omitted); *Clarke*, 370 F.Supp.2d at 604 (citations omitted).

> *1. There are Other Similarly Situated Employees Who May Desire to Opt In.*

That other similarly situated employees desire to opt-in to this action is manifest from the record. Fernando De La Garza, William E. Hope and Donald Lineberry have submitted declarations in support of this motion. (*See* Exhibits 1 through 3). Above and beyond Plewinski, an additional six waiters, including Ruairi C. Dalton (*See* Doc. 5), Fernando De La Garza (*See* Doc. 5), William E. Hope (*See* Doc. 17), Donald Lineberry (*See* Doc. 2), John Marroquin (*See* Doc. 5) and Angelita Martinez (*See* Doc. 10) have already filed consents to participate as plaintiffs in this collective action.

Courts routinely consider the presence of additional consents as evidence supporting conditional certification. *See, e.g., Shaffner,* 2006 WL 1007542 at *1 ("The

---

[5]  *See also , Rollison v. CC Services, Inc.*, 2006 WL 1596824 * 3 (S.D. Ill. 2006)("While the Plaintiffs have not provided any affidavits to support their assertions, their pleadings demonstrate that they have sufficiently alleged violations of the FLSA."); *Neagley v. Atascosa County EMS*, 2005 WL 354085 (W.D. Tex. Jan. 7, 2005)(Rodriguez, J.)(granting the "implied" motion for notice in plaintiff's complaint); *Williams v. Sprint/United Mgmt Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004)(allegations in complaint were "more  than sufficient to support provisional certification"); *Butler v. City of San Antonio*, 2003 WL 22097250, at *2 (W.D. Tex. Aug.21, 2003); *Enterprise Concepts, Inc. v. Finnell*, 964 S.W. 2d 348, 351 (Tex. App.– Beaumont 1998, no pet.)(collecting cases).

addition of two of the three Plaintiffs after the inception of this case is persuasive evidence that a putative class does exist."); *see also*, *Thiessen v. General Electric Capital Corp.*, 996 F.Supp.1071(D. Kan.1998)(pleadings plus opt-in forms sufficient for conditional certification); *Sperling v. Hoffman-La Roche,* 118 F.R.D. 392, 406 (D.N.J.1988)(same).  Accordingly, it is clear that there are other similarly situated waiters who may desire to opt-in.

> 2.   *The Other Potential Class Members are Similarly Situated With Respect to Their Job Requirements and Pay Provisions.*

The violations alleged by Plewinski were suffered across the board by Luby's' waiters.  Luby's' waiters, like Plewinski, routinely waited on Luby's' customers, took orders, served food and drinks, interacted with Luby's' customers and bussed the tables in their sections.  (De La Garza Dec., ¶ 3 & Exhibit 1, Wait Staff Job Description; Hope Dec., ¶ 4; Lineberry Dec., ¶ 4; Plewinski Dec., ¶¶ 3 & 4).  All of Luby's' waiters earned a direct wage of $2.13 per hour plus tips.  (De La Garza Dec., ¶ 3; Hope Dec., ¶¶ 2 & 8; Lineberry Dec., ¶¶ 7 & 8; Plewinski Dec., ¶ 7).  All of Luby's waiters surrendered 15% of their tips to Luby's' tip pool.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 8).  In short, Plewinski's experience was typical of a Luby's' waiter.

> a)   *All of Luby's' Waiters Perform The Same Or Similar Duties.*

While courts look to similarity in working conditions in evaluating the similarly situated issue, similarity in job duties is of less significance if the employees at issue are admittedly non-exempt.  *See Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 364 (M.D. Ala. 1999).  Therefore, courts have consistently rejected the argument that a class "is

problematic because it includes individuals from various positions, locations, etc.; the law is plain that this does not undermine the 'similarly situated' requirement." *Donohue v. Francis Services, Inc.,* 2004 WL 1161366, *3 (E.D. La. May 2004)(citations omitted). Nonetheless, it is clear that Plewinski and the other members of the wait staff performed the same or similar duties.  (De La Garza Dec., ¶ 3 & its attached Exhibit 1, Wait Staff Job Description; Hope Dec., ¶ 4; Lineberry Dec., ¶ 4; Plewinski Dec., ¶¶ 3 & 4).

> b)  *All Luby's Waiters Are Paid in the Same Fashion and Subject to the Same Tip Pool Policy.*

As set forth above, Luby's pays its waiters less than the minimum hourly wage. (De La Garza Dec., ¶ 3; Hope Dec., ¶ 2; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 7). Luby's claims – though it is not entitled to – a credit for the tips its waiters receive from its customers.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 8; Lineberry Dec., ¶ 7; Plewinski Dec., ¶ 7).  All of Luby's' wait staff contribute the same percentage of their tips to the mandatory (and illegal) tip pool.  (De La Garza Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 8).  Therefore, all Luby's' waiters are similarly situated with respect to the relevant pay practices.

> 3.  *Plewinski Has Carried His Burden of Demonstrating a Reasonable Basis for a Collective Action.*

Collective action authorization and notice to the class is well warranted here because Plewinski has demonstrated a "reasonable basis" for his class allegations.  *See Grayson*, 79 F.3d at 1097.  Plewinski provides detailed allegations in his complaint and amply supports the allegations with evidence.  For example:

- The Complaint avers in detail Plewinski's claims, including the common job requirements, pay provisions, and Luby's' policy of paying its waiters less than the minimum wage;

- The attached declarations and documentary evidence demonstrate that other employees performed the same relevant job duties, under the same pay provisions, and were subject to the same unlawful tip pool as was Plewinski; and

- The attached declarations and documentary evidence demonstrate that Luby's distributed the proceeds of the tip pools to kitchen workers who are not customarily tipped employees.

Therefore, Plewinski more than satisfies the "lenient" standard for collective action notice. *Mooney*, 54 F.3d at 1213-14; *Metz v. Treetop Enters, Inc.*, 1999 U.S. Dist. LEXIS 18386, *7 (N.D. Ala. 1999)(plaintiffs need only show a "colorable basis for a representative suit"); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)(a "modest factual showing" sufficient to justify notice).

Indeed, Plewinski makes a strong – not just a "modest" – showing of similarity of duties and pay provisions among Luby's' waiters.  Plewinski's evidence sets forth the similar (in fact identical) duties performed by Plewinski and the other members of Luby's' wait staff.  Luby's waiters are compensated in exactly the same fashion.  Most importantly, Luby's uniformly requires its waiters to contribute a portion of their tips to an invalid tip pool. Given the substantial evidence showing Luby's' illegal policy applied to all of Luby's' wait staff, notice is properly sent to: "All waiters employed by Luby's at any time from October 25, 2004 to the present."

The class Plewinski seeks to certify is neither novel nor unmanageable.  Nearly identical classes have been approved by courts in the Southern District of Texas and elsewhere within the Fifth Circuit.  *See*, *e.g.*, *Bernal v. Vankar Enters., Inc.*; 2008 WL 791963 (W.D.Tex. 2008)(Rodriguez, J)(granting notice to bartenders who were required to contribute to tip pool benefiting management and cleaning crew); *Anderson v. Great Peak Corp.*; Civil Action No. (S.D.Tex. March 18, 2008)(Atlas, J.)(granting notice to

waiters who were required to contribute to tip pool benefiting chefs and floor managers)(attached as Exhibit 5); *Chisolm v. Gravitas Restaurant Ltd.*, Civil Action No. 07-475 (S.D.Tex. August 16, 2007)(Johnson, J.)(granting notice to wait staff required to contribute to tip pool to cover stemware breakage)(attached as Exhibit 6); *Dini v. Zenith Café Corp.*; Civil Action No. 06-1009 (W.D.Tex. August 14, 2007)(Yeakel, J.)(granting notice to wait staff who were required to contribute to tip pool benefiting non-service kitchen employees)(attached as Exhibit 7); *Gonzales v. Sam Houston Race Park, Ltd.*; Civil Action No. 06-2579 (S.D.Tex. May 23, 2007)(Lake, J.)(granting notice to wait staff who were required to contribute to tip pool benefiting non-service bartenders)(attached as Exhibit 8); *Bursell*, 2006 WL 3227334 at *3 (granting notice to waiters who were required to contribute a percentage of their gross sales to a tip pool to cover "breakage"). Therefore, Plewinski requests that this Court approve the proposed notice attached as Exhibit 9.  Plewinski respectfully request an opt-in period of sixty (60) days.

### E.      THE NEED FOR EXPEDITED ACTION.

In a collective action under the FLSA, when additional plaintiffs file their consents with the court, the filing does not "relate back" to the original filing date of the complaint for the purposes of the statute of limitations.  29 U.S.C. § 256.  Therefore, every day that passes can result in a progressive diminishing of the amount of overtime wages potential plaintiffs could recover in this action.  It may eliminate the claims of some potential plaintiffs completely.  To minimize the prejudice the potential class members are suffering on a daily basis, Plewinski requests the Court authorize the issuance of a notice to all current and former waiters employed by Luby's during the three (3) year period preceding the filing of this suit to the present.

**F.    THE COURT SHOULD REQUIRE LUBY'S TO PRODUCE INFORMATION REGARDING THE PROPOSED CLASS TO FACILITATE NOTICE.**

Production of a mailing list for class members is a common component in collective actions.  *Sperling*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses . . ."); *Clarke*, 370 F.Supp.2d at 606 (approving discovery of contact information for all members of the proposed class); *Grayson*, 79 F.3d at 1111 (ordering production of mailing list); *Belcher*, 927 F. Supp. at 252 (same); *Hipp*, 164 F.R.D. at 576 (same); Exhibit 8, *Gonzales v. Sam Houston Race Park, Ltd.*; Civil Action No. 06-2579 (S.D.Tex. May 23, 2007)(Lake, J.)(same).   Indeed, such a mailing list is essential to the timely notice.  *Sperling*, 493 U.S. at 170 ("timely notice" required). However, such information is relevant even if the Court were to determine that the current state of the record did not warrant the issuance of a court approved notice. *See, e.g.,* Exhibit 10, *Tierney v. TMC Orthopedic, LP*, Civil Action No. H-03-2420, *1 (S.D. Tex. Mar. 19, 2004).

For example, courts commonly allow production of this information to assist in evaluating whether a court-approved notice is warranted.  *See, e.g., Miklos v. Golman-Hayden Cos., Inc.*, 2000 WL 1617969, *2 (S.D.Ohio Oct.24, 2000)(granting plaintiff's motion to compel production of names and addresses of the purported "similarly situated" class prior to addressing the issue of notice); *Bailey v. Ameriquest Mortgage* Co., 2002 WL 100388, *2 (D.Minn. Jan.23, 2002)(same); Exhibit 11, *Smith v. Integrated Electrical Services, Inc.*, Civil Action No. 02-3254 (S.D. Tex. Aug. 21, 2003).   In addition, Plewinski has identified other similarly situated individuals in this motion for notice and these individuals "might have knowledge of other discoverable matter." *See, Sperling*, 493 U.S. at 170.  Accordingly, for the purpose of facilitating notice, Luby's

should be required to provide the names and addresses of all waiters it has employed from October 27, 2004 to the present.

## IV. CONCLUSION

Plewinski has met the lenient burden for conditional certification and the issuance of court-approved notice.  Each day that passes is another day's pay that the workers victimized by Luby's' unlawful tip pool policy will never recover.   Accordingly, Plewinski respectfully requests the Court: 1) conditionally certify this action as a collective action; 2) authorize dissemination of the suggested notice to potential members of this collective action; 3) order production of the names, addresses and telephone numbers of the potential class members in order to efficiently distribute the suggested notice; and 4) award Plewinski all other relief to which he may be justly entitled.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

       **/S/ Richard J. Burch**

By:_____

       Richard J. Burch
       State Bar No. 24001807
       S.D. of Texas No. 21615
       Michael K. Burke
       State Bar No. 24012359
       S.D. of Texas No. 24356
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile

**Of Counsel:**
**DEBES LAW FIRM**
Robert R. Debes, Jr.
State Bar No. 05626150
S.D. Tex. No. 12308
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
(713) 623-0900 – Telephone
(713) 623-0951 – Facsimile

<u>**CERTIFICATE OF CONFERENCE**</u>

      I attempted in good faith to confer with opposing counsel regarding the foregoing motion but he remains opposed to the relief sought.

**/S/ Richard J. Burch**

_____

Richard J. Burch

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of *Plaintiff's Motion for Conditional Certification and Notice to Potential Collective Class Members* has been served upon all opposing parties by and through their attorneys of record as indicated below via the Southern District's CM/ECF system on this the 4th day of April, 2008.

Terrence Robinson
Heidi Gumienny
**GORDON & REES, LLP**
1900 West Loop South, Suite 1000
Houston, Texas 77027

**/S/ Richard J. Burch**
_____
Richard J. Burch