## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PLEWINSKI, on Behalf of | ] | |
| Himself and Others Similarly Situated, | ] | |
| | ] | CASE NO. 4:07-cv-3529 |
| *Plaintiff*, | ] | |
| | ] | |
| v. | ] | |
| | ] | JURY TRIAL DEMANDED |
| LUBY'S, INC. D/B/A LUBY'S, | ] | |
| | ] | |
| *Defendant*. | ] | |
| _____ | ] | |

## PLAINTIFFS' RESPONSE TO
## LUBY'S' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**BRUCKNER BURCH PLLC**

Richard J. (Rex) Burch
S.D. Tex. No. 21615
State Bar No. 24001807
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

Robert R. Debes, Jr.
S.D. Tex. No. 12308
Texas State Bar No. 05626150
**DEBES LAW FIRM**
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
Telephone: (713) 623-0900
Telecopier: (713) 623-0951

## TABLE OF CONTENTS

I. SUMMARY ................................................................................................ 1

II. BACKGROUND ........................................................................................ 1

   A.   **The Relevant Facts.** ......................................................................... 1

      1.   What Luby's' Waiters Do. ....................................................... 1

      2.   What Luby's' Service Attendants Do. .................................... 2

      3.   Luby's Requires Waiters to Give a Portion of Their Tips to Service Attendants. ................................................................... 3

   B.   **The Legal Framework** ..................................................................... 4

      1.   The Substantive Law ............................................................... 4

      2.   Luby's' Burden to Establish its Defense on Summary Judgment ...................... 8

III. ARGUMENT ............................................................................................ 9

   A.   **Luby's Admits All the Elements of Plaintiffs'** *Prima Facie* **Case.** .................... 9

   B.   **Luby's Waiters Cannot Be Required to Give Up a Portion of Their Tips to Help Luby's Pay Its Service Attendants.** .......................... 9

      1.   The Evidence Regarding Service Attendants' Actual Job Duties Precludes Summary Judgment ...................................... 9

      2.   Because Service Attendants Do Not Interact with Customers, Summary Judgment Should Be Denied................ 11

      3.   Luby's Failed to Show Service Attendants Perform Primarily Tipped Work .. 14

   IV. CONCLUSION ...................................................................................... 16

i

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).....................................................................8

*Ayers v. 127 Restaurant Corp.*, 12 F.Supp.2d 305 (S.D.N.Y. 1998)...............................................7

*Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728 (1981) ....................................4, 5

*Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98 (E.D. Tenn. 1979) ..............................................7

*Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362 (5th Cir. 1973) ..................................7

*Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334 (S.D.Tex. 2006) ..........................6, 7

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).................................................................................8

*Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749 (S.D.N.Y. March 30, 2006).........................7, 10

*Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760 (S.D. Tex. March 25, 2008)...........7, 8, 9

*Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp.2d 220 (S.D.N.Y. 2002) ...............................7

*Davis v. B & S, Inc.,* 38 F.Supp.2d 707, 716-17 (N.D.Ind.1998)..................................................10

*Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir. 1982) .........................................7

*Fast v. Applebee's Intern., Inc.*, 502 F.Supp.2d 996 (W.D.Mo. 2007) ............................10, 14, 15

*Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986) ..................................................................8

*Hodgson v. Frisch's Dixie, Inc.*, 1971 WL 837 (W.D.Ken.1971)..................................................12

*Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986) ............................................................9

*Idaho Sheet Metal Works v. Wirtz,* 383 U. S. 190 (1966) ........................................................12, 14

*Kilgore v. Outback Steakhouse,* 160 F.3d 294 (6th Cir.1998).......................................10, 11, 12, 13

*Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663 (N.D. Tex. 2007).........................11, 12

*Lu v. Jing Fong Restaurant, Inc.*, 503 F.Supp.2d 706 (S.D.N.Y. 2007) .............................11, 12, 13

*Marshall v. Krystal Co.,* 467 F.Supp. 9 (E.D. Tenn. 1978)...........................................................10

*Morgan v. SpeakEasy, LLC*, 2007 WL 2757170 (N.D.Ill. 2007)..................................................11

*Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999).................................................passim

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).................................................8

*Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D. Tex. 1995)...........................................................7, 9

*Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir. 1977)..............................................................6

*Roland Electric Co. v. Walling,* 326 U. S. 657 (1946) ...........................................................12, 14

*Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) .....................................................9

*Smith v. Noso, Inc.*, 2007 WL 2254531 (M.D. Fla. Aug. 3, 2007)..................................................7

*Wajcman v. Investment Corp.*, 2008 WL 783741 (S.D.Fla. Mar. 20, 2008) ......................10, 12, 13

**STATUTES**

29 U.S.C. § 203(m) .................................................................................................... 6

29 U.S.C. § 203(t) ...................................................................................................... 6

29 U.S.C. § 206(a) ................................................................................................... 6, 9

**REGULATIONS**

29 C.F.R. § 531.56(e) ............................................................................................... 14

**RULES**

FED. R. CIV. P. 56(c) .................................................................................................. 8

**TREATISES**

Department of Labor, Bureau of Labor Statistics, Bulletin 2335 (August 1989).................. 12, 18

DOL Field Operations Handbook § 30d00(b).............................................................. 8

DOL Field Operations Handbook § 30d00(e) ............................................................ 16

DOL Field Operations Handbook § 30d04(c) ............................................................ 11

DOL Opinion Letter WH, 1997 WL 998047 (Nov. 4, 1997)............................11, 12, 14

DOL Opinion Letter WH-321, 1975 WL 40945 (April 30, 1975) ................................. 6

Fair Minimum Wage Act of 2007, Pub. L. 11-28 (May 25, 2007) ................................ 6

Fifth Circuit Pattern Jury Instructions – Civil § 11.1 (2006)...................................... 10

House Report 93-913.................................................................................................. 6

Senate Report 89-1487 ............................................................................................... 5

Senate Report 93-690 ............................................................................................ 6, 8, 11

## I. SUMMARY

Luby's, Inc. d/b/a Luby's (Luby's) pays its waiters $2.13 per hour, less than the

minimum wage.  Luby's claims it can take a "tip credit" against its minimum wage obligations

for the tips its waiters receive.  Luby's is not entitled to a tip credit, however, because its waiters

do not get to keep all their tips.

Instead, Luby's requires its waiters to share (or "pool") their tips with workers who wash

dishes, clean the public restrooms, mop the floors, and perform kitchen maintenance.  These

"service attendants" are like "dishwashers," "janitors" and/or "kitchen workers" who cannot

participate in tip pools.  Therefore, contrary to Luby's' assertion, the parties do **not** "agree" that

this case "may be decided as a matter of law."  Because the relevant facts are in dispute, Luby's

motion for summary judgment should be denied.

## II. BACKGROUND

### A.    The Relevant Facts.

####     1.    What Luby's' Waiters Do.

Luby's operates several cafeteria-style restaurants where it employs waiters including, at

various times and locations, the named and opt-in plaintiffs (collectively Plaintiffs).[1]  De La

Garza  Dec., ¶ 2; Hope Dec., ¶ 2; Lineberry Dec., ¶ 2; Plewinski Dec., ¶ 1; *see also* Doc. 2, Doc.

5 & Doc. 17 (consents of opt-in plaintiffs).  Luby's' waiters greet customers, refill drinks, bring

condiments, suggest dessert options, make sure the dining area is tidy and, generally, ensure that

the guests have a pleasurable dining experience.  De La Garza  Dec., ¶ 3; Hope Dec., ¶ 4;

---

[1]    In support of this response Plaintiffs submit, as Exhibits 1 through 4 respectively, the declarations
of Fernando De La Garza (cited herein as De La Garza Dec.), William Hope (cited herein as Hope Dec.),
Donald R. Lineberry (cited herein as Lineberry Dec.) and Daniel Plewinski (cited herein as Plewinski
Dec.).  As Exhibit 5, Plaintiffs also submit a second declaration of Fernando De La Garza (cited herein as
Second De La Garza Dec.) along with its incorporated photo attachments.

Lineberry Dec., ¶ 4; Plewinski Dec., ¶ 3.  Because Luby's does not employ busboys, its waiters also bus the tables in their section and deliver the dirty dishes to the kitchen area to be washed. De La Garza  Dec., ¶ 3 and Wait Staff Job Description attached to De La Garza Dec. as Exhibit 1; Hope Dec., ¶ 4; Lineberry Dec., ¶ 4; Plewinski Dec., ¶ 4; Second De La Garza Dec. ¶ 7.

Unsurprisingly, Luby's' Wait Staff Job Description (attached to Exhibit 1, De La Garza Dec.) and Luby's' Table Cleaning Procedures direct the *waiters* to bus the tables after customers depart and to deliver any dirty dishes to the roll cart station or to the dish return room.  *See* Exhibit 6, Luby's' Table Cleaning Procedures (emphasis added).  Luby's' Table Cleaning Procedures make no mention of service attendants participating in or assisting with bussing the tables.  *Id*.  Luby's proposed expert concedes that Luby's waiters perform much "of the work normally reserved for bussers such as clearing away the dishes from the tables[.]"  *See* Luby's' MSJ, at Exhibit B, p. 6.

> 2.     What Luby's' Service Attendants Do.

Luby's also employs kitchen workers it calls "service attendants."  Service attendants' primary job is to clean dirty dishes.  De La Garza Dec., ¶ 3; Hope Dec., ¶ 5; Lineberry Dec., ¶ 5; Plewinski Dec., ¶ 5.  Service attendants are not out in the main area of the restaurant while they are working and do not interact with the restaurant customers.  De La Garza Dec., ¶ 3; Hope Dec., ¶ 5; Lineberry Dec., ¶ 5; Plewinski Dec., ¶ 5.

Rather, service attendants work in the "dish return area," a room located behind a door in the restaurant's kitchen.  Second De La Garza Dec., ¶ 5 & attached photos P0009, P0012, P0013 and P0018.  Only occasionally do service attendants exit the kitchen door and go into a corner of the restaurant to transport dirty dishes and trays from a roll cart station into the kitchen.  Second De La Garza Dec., ¶ 6.  However, Luby's intentionally places the roll cart station in a corner of

the restaurant away from the customers.  Second De La Garza Dec., ¶ 6; *see also*, Exhibit 7,

Luby's' Bus Cart And Bus Station Description (stations should be set up so that they are "not []

too close to any guest tables . . . to minimize the sound aggravation and sometimes unsightly

appearance of bus tubs filled with dirty plates.").

Even when outside the dish return area, however, service attendants do not interact with

the customers.  De La Garza Dec., ¶ 3; Hope Dec., ¶ 5; Lineberry Dec., ¶ 5; Plewinski Dec., ¶ 5;

Second De La Garza Dec., ¶ 6.  Service attendants never clear dishes directly from the dining

tables.  De La Garza  Dec., ¶ 3 and Wait Staff Job Description attached to De La Garza Dec. as

Exhibit 1; Hope Dec., ¶ 4; Lineberry Dec., ¶ 4; Plewinski Dec., ¶ 4.Second De La Garza Dec., ¶

7.  This function is performed by the wait staff.

In addition to their dishwashing duties, service attendants also perform traditional

janitorial duties.  Service attendants must clean the customer restrooms following Luby's'

restroom cleaning procedures.  *See* Exhibit 8, Service Attendant Job Descriptions.  Service

attendants must also clean and maintain the dish return area of the kitchen.  *Id.*  Before leaving

after their shift, service attendants must follow and complete the daily cleaning procedures.  *Id.*

> 3.    Luby's Requires Waiters to Give a Portion of Their Tips to Service
>          Attendants.

Luby's does not pay its waiters the full minimum wage for each hour worked.[2]  De La

Garza Dec., ¶ 3; Hope Dec., ¶ 2; Lineberry Dec., ¶ 2; Plewinski Dec., ¶ 7.  Rather, Luby's pays

its waiters a direct wage of $2.13 per hour.  De La Garza  Dec., ¶ 3; Hope Dec., ¶ 2; Lineberry

Dec.,  ¶ 2; Plewinski Dec., ¶ 7.  In addition to this direct wage, the waiters receive tips from

Luby's' customers.  De La Garza  Dec., ¶ 3; Hope Dec., ¶ 8; Lineberry Dec., ¶ 7; Plewinski

Dec., ¶ 7.  Luby's claims a "tip credit" for the difference between the direct wage it pays its

---

[2]    Prior to July 24, 2007, the federal minimum wage was $5.15 per hour.  As of July 24, 2007, the
federal minimum wage increased to $5.85 per hour.

waiters and the full minimum wage.  Plewinski Dec., ¶ 7; *see also* Luby's Motion For Summary

Judgment, Doc. 18, p. 4 (hereinafter cited as Luby's' MSJ).

Luby's does not allow its waiters to keep all of the tips they earn.  De La Garza Dec., ¶ 3;

Hope Dec., ¶ 9; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 8.  Instead, Luby's withholds fifteen

percent (15%) of each waiter's tips at the end of each shift.  De La Garza Dec., ¶ 3; Hope Dec., ¶

9; Lineberry Dec., ¶ 8; Plewinski Dec., ¶ 8; Luby's' MSJ, p. 4.  Luby's pools the amounts it

withholds from its waiters' tips (the tip pool) and then distributes the tip pool to the service

attendants.  De La Garza Dec., ¶ 3; Hope Dec., ¶ 9; Lineberry Dec., ¶ 8; Luby's' MSJ, p. 4.

**B.      The Legal Framework**

1.      The Substantive Law

*a.      The Enactment and Underlying Policy of the FLSA.*

Congress enacted the FLSA in 1938 "'to protect all covered workers from substandard

wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance

of the minimum standard of living necessary for health, efficiency and general well-being of

workers.'"  *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 739 (1981) (quoting

29 U.S.C. § 202(a)).  Congress enacted the FLSA under its commerce power, having found that

the existence of such "detrimental" labor conditions would endanger national health and

efficiency and consequently would interfere with the free movement of goods in interstate

commerce.  *Barrentine*, 450 U.S. at 739 n.14 (citations omitted).  "[T]he FLSA was designed to

give specific minimum protections to *individual* workers and to ensure that *each* employee

covered by the Act would receive a fair day's pay for a fair day's work and would be protected

from the evil of overwork as well as underpay." *Barrentine*, 450 U.S. at 739 (emphasis in

original, quotations omitted).

The Supreme Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay. *Barrentine*, 450 U.S. at 740. The Supreme Court has held that FLSA rights cannot be abridged by contract, industry custom or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. *Id.* at 740-41 (citations omitted). Though the FLSA has been amended a number of times through the years, the fundamental legislative policies behind the Act have remained constant.

      b.      *The 1966 Amendments – Congress Expands the FLSA to Cover Restaurants.*

As originally enacted, the FLSA contained several industry-wide exemptions and exclusions from coverage. One such exclusion was the restaurant and food-service industry. In 1966, Congress amended the FLSA to extend minimum wage protection to restaurant and food-service employees. *See* Senate Report 89-1487, reprinted at S. Rep. No. 1487, 89th Cong., 2nd Sess. 1966, 1966 U.S.C.C.A.N. 3002 at *3014, 1966 WL 4378 (Aug. 23, 1966). The amendments defined a "tipped employee" as one who is engaged in an occupation in which he customarily and regularly receives more that $20 per month in tips. *Id.* Congress also enacted the "tip credit" by specially defining "wages" for "tipped employees" as being deemed increased in an amount determined by the employer on account of tips by up to (but not more than) fifty percent of the applicable minimum wage. *Id.*

      c.      *The 1974 Amendments – Congress Clarifies the "Tip Credit" Requirements.*

In 1974, Congress amended Section 203(m) of the FLSA, in relevant part, "to make clear the original Congressional intent that an employer could not use the tips of a tipped employee to satisfy more than 50 percent of the Act's applicable minimum wage." *See* Exhibit 9, Senate

Report 93-690, at p. 43; DOL Opinion Letter WH-321, 1975 WL 40945 (April 30, 1975).

Further, the amendments were meant to ensure "that all tips received by such employee must be

retained by the employee."  Senate Report 93-690, at p. 43; *see also*, DOL Labor Opinion Letter

WH-321, 1975 WL 40945 (April 30, 1975).  Further still, "[w]ith respect to tipped employees,

the tip credit provision of the act is not to apply unless … all tips received by a tipped employee

have been retained by the tipped employee (either individually or through a pooling

arrangement)." House Report 93-913, H.R. Rep. No. 913, 93rd Cong., 2nd Sess. 1974, 1974

U.S.C.C.A.N. 2811 at *2822, 1974 WL 11448 (March 15, 1974).

> ### d.    The Current State of the Law.

The FLSA requires employers to pay employees at a minimum hourly rate – currently

$5.85 – for each hour worked.  *See* 29 U.S.C. § 206(a).[3]  The Section 203(m) tip credit represents

a partial exception to this rule allowing an employer to pay tipped employees as little as $2.13

per hour provided certain conditions are met.  29 U.S.C. § 203(m).  However, an employer must

comply with the requirements of Section 203(m) "precisely" in order to claim a tip credit.

*Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977); *Bursell v. Tommy's Seafood

Steakhouse*, 2006 WL 3227334 *1 (S.D.Tex. 2006)(the requirements of Section 203(m) are

strictly construed).

Among other things, an employer must ensure the employees make at least the minimum

wage when the direct wages paid by the employer and the tips the employees earn are combined.

29 U.S.C. § 203(m).  The employer must also inform the employees of the tip credit.  *Id.*  The

employees, further, must keep all the tips they receive other than those contributed to a valid tip

pool.  *Id.*  Importantly, if the tipped employees are required to share their tips with any employee

---

[3]    Prior to July 24, 2007, the minimum wage was $5.15 per hour.  *See* Fair Minimum Wage Act of
2007, Pub. L. 11-28 (May 25, 2007) & 29 U.S.C. § 206(a) (2006).

who does not customarily and regularly receive tips, the employer cannot claim any tip credit. *See, e.g., Myers v. Copper Cellar Corp.*, 192 F.3d 546, 548-49 n. 4 (6th Cir. 1999); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. March 30, 2006); *Ayers v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308-09 (S.D.N.Y. 1998); *Bonham v. Copper Cellar Corp.*, 476 F.Supp. 98 (E.D. Tenn. 1979).

The employer bears the burden of proving a valid tip pool arrangement among regularly and customarily tipped employees. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595-96 (N.D. Tex. 1995) (*citing Barcellona,* 597 F.2d at 467); *Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760, at *3 (S.D. Tex. March 25, 2008) ("the employer bears the burden of proving its entitlement to a tip credit"); *Myers*, 192 F.3d at 548-49 n.4; *see also*, Senate Report 93-690, p. 43 (Congress' intent is "to place on the employer the burden of proving the amount of tips received by tipped employees and the amount of tip credit, if any, which such employer is entitled to claim as to tipped employees."); DOL Field Operations Handbook § 30d00(b) (same).[4] Courts "narrowly construe" the provisions of Section 203(m) against the employer. *Myers*, 192 F.3d at 548-49 n.4; *Bursell*, 2006 WL 3227334, at *1 (S.D.Tex. 2006)(Rosenthal, J.)(tipped employee provisions are "strictly construed")(citing *Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002)).  "Unless the employer satisfies its burden of showing the applicability of the tip credit, the employees are 'entitled to the full minimum wage for every hour worked.'" *Smith v. Noso, Inc.*, 2007 WL 2254531, at *4 (M.D. Fla. Aug. 3, 2007)(*citing Barcellona*, 597 F.2d at 467).

---

[4]      *See also, Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 474 (11th Cir. 1982) ("the employer has the burden of showing that he is entitled to the credits claimed under s 3(m) of the FLSA"); *Brennan v. Veterans Cleaning Serv., Inc*., 482 F.2d 1362, 1369 (5th Cir. 1973) (describing Section 203(m) as an "exception" to the FLSA's minimum wage requirements).

2.      Luby's' Burden to Establish its Defense on Summary Judgment

Summary judgment is proper only where there is no genuine issue with respect to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)(quoting FED. R. CIV. P. 56(c)). The substantive law determines which facts are material. *Liberty Lobby*, 477 U.S. at 248. The court may not make credibility determinations or weigh the evidence, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-151 (2000)(quoting *Liberty Lobby*, 477 U.S. at 250-51). The court must give credence to the evidence favoring the nonmovant and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.*

Applying the substantive law, Luby's' tip pool is only valid as a matter of law if there is no material question that its service attendants are engaged in an occupation that "customarily and regularly receives tips." 29 U.S.C. § 203(m); *Myers*, 192 F.3d at 551. When a party, such as Luby's, seeks summary judgment on an issue for which it bears the burden of proof, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986)(emphasis in original).[5] Only if Luby's carries this heavy burden are Plaintiffs required to go beyond the pleadings and designate facts showing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

---

[5]      Thus, Luby's would have to establish all the elements of its affirmative defense in order to obtain summary judgment. Luby's motion, however, addresses at most two of the four elements. *See Chisolm,* 2008 WL 838760 at *3.

## III. ARGUMENT

**A.     Luby's Admits All the Elements of Plaintiffs' *Prima Facie* Case.**

To prevail on their claim, Plaintiffs must prove: (1) the existence of an employment relationship; (2) FLSA coverage; and (3) Luby's "failed to pay [them] the minimum wage[.]" *See, e.g.,* Fifth Circuit Pattern Jury Instructions – Civil § 11.1 (2006); 29 U.S.C. § 206(a). Luby's admits all of these elements.[6]  Because Luby's concedes all the elements of Plaintiffs' claim, Luby's contention that Plaintiffs cannot establish a *prima facie* case is simply dead wrong. See Luby's' MSJ, p. 12.

Luby's claim that "Plaintiff must show that Luby's violated the FSLA (sic) by creating an improper tip pool that includes service attendants" is similarly out of whack.  ***Luby's*** must prove its tip pool is valid, not the other way around.  *Chisolm*, 2008 WL 838760, at *3; *Priba Corp.*, 890 F.Supp. at 595-96; *Barcellona,* 597 F.2d at 467; *Myers*, 192 F.3d at 549 n.4.  Because it is undisputed that Luby's paid its waiters less than the minimum wage, Luby's' motion for summary judgment should be denied.

**B.     Luby's Waiters Cannot Be Required to Give Up a Portion of Their Tips to Help Luby's Pay Its Service Attendants.**

     1.     The Evidence Regarding Service Attendants' Actual Job Duties Precludes Summary Judgment

In general, the question of how employees spend their time working is a question of fact. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).  Moreover, the significance of duties relative to one another is also a factual question.  *Shockley v. City of Newport News*, 997 F.2d 18, 26 (4th Cir. 1993) (citing *Icicle Seafoods*, 475 U.S. at 714).  Further, which (if any) of an employees' various duties are tip-producing is also a question of fact.  *Fast v. Applebee's Intern.,*

---

[6]     *See* Answer (Doc. 7), ¶ 3.04 & Luby's MSJ (Doc. 18), p. 4 (admitting Luby's employed Plaintiffs); Answer (Doc. 7), ¶ 3.06 (admitting FLSA coverage); and MSJ (Doc. 18), p. 4 (admitting Luby's paid its waiters at a rate below $5.15).

*Inc.*, 502 F.Supp.2d 996, 1004 (W.D.Mo. 2007).  With regard to whether an employee is one who is "customarily and regularly tipped," these general fact questions become eminently material.

Employees who work as waiters, bellhops, busboys and bartenders are in "occupations" which are "customarily and regularly tipped."  S. REP. NO. 93-690, at 43 (1974); DOL Wage and Hour Div. Opinion Letter, 1997 WL 998047 (Nov. 4, 1997) (emphasis added); *Chan*, 2006 WL 851749, at *14.  On the flip side, **janitors**, **dishwashers**, chefs and laundry room attendants are ***not*** "customarily and regularly tipped."   S. REP. NO. 93-690, at 43 (1974)(emphasis added); DOL Opinion Letter WH, 1997 WL 998047 (Nov. 4, 1997) (emphasis added); DOL Field Operations Handbook § 30d04(c)[7]; *Kilgore v. Outback Steakhouse,* 160 F.3d 294, 301 (6th Cir.1998)(giving as examples dishwashers, cooks and janitors as employees who may not share in a tip pool).  Nor are general kitchen-maintenance workers.  *Marshall v. Krystal Co.,* 467 F.Supp. 9, 12-13 (E.D. Tenn. 1978); Exhibit 10, Department of Labor, Bureau of Labor Statistics, Bulletin 2335 (August 1989) (kitchen helpers)   Therefore, where the employee's job duties and proper categorization are in dispute, a material question of fact exists precluding summary judgment on the "customarily and regularly tipped" issue.[8]

Plaintiffs' evidence (which must be credited) is that service attendants spend their time performing the duties of a dishwasher, kitchen worker and/or janitor.  Congress, the Department of Labor and the courts are uniform in concluding that these types of employees may not

---

[7]      Available at http://www.dol.gov/esa/whd/FOH/FOH_Ch30.pdf.

[8]      *See*, *e.g.*, *Wajcman v. Investment Corp. of Palm Beach*, 2008 WL 783741, *5 (S.D.Fla. March 20, 2008)(genuine issue of material fact existed as to whether floor supervisors' duties qualified them as tipped employees and therefore eligible to participate in tip pool); *Davis v. B & S, Inc.,* 38 F.Supp.2d 707, 716-17 (N.D.Ind.1998) (genuine issue of material fact existed as to whether employee's duties qualified him as tipped employee and therefore permitted to participate in tip pool); *see also*, DOL Opinion Letter WH, 1997 WL 998047 (Nov. 4, 1997) (employees who performed both dishwashing and bussing duties unlikely to qualify for participation in a tip pool).

participate in tip pools.  Further, the service attendants' actual duties determine whether they are

eligible to participate in a tip pool.  *Myers*, 192 F.3d at 550; *see also*, *Lu v. Jing Fong*

*Restaurant, Inc.*, 503 F.Supp.2d 706, 711 (S.D.N.Y. 2007) (summary judgment improper

because a genuine issue of material fact existed whether the actual duties of "dish transportation

workers" made them more like busboys (tipped) or more like dishwashers (non-tipped)); DOL

Opinion Letter (Nov. 4, 1997), 1997 WL 998047 (employer's job description assigning customer

service duties to dishwashers did not convert them into tipped employees eligible to participate

in tip pool).  Plaintiffs' evidence of the service attendants' actual job duties (and therefore

categorization as tipped or non-tipped) makes summary judgment improper.

> 2.     Because Service Attendants Do Not Interact with Customers, Summary
>          Judgment Should Be Denied.

Customer interaction, particularly in the restaurant industry, is the touchstone

characteristic of a "customarily and regularly tipped" occupation.  *See*, *e.g.*, *Myers*, 192 F.3d at

548-550; *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 301 (6th Cir. 1998); *Morgan*

*v. SpeakEasy, LLC*, 2007 WL 2757170, at *18 (N.D.Ill. 2007).  Thus, courts routinely consider

look to the amount of customer interaction in determining whether an employee qualifies as one

who is "customarily and regularly tipped."  Luby's nonetheless claims customer interaction is

not a prerequisite for participation in a tip pool.  *See* Luby's Motion, pp. 7-8.  In support of this

proposition, Luby's cites only one case - *Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d

663, n. 5 (N.D. Tex. 2007).  In addition to being *dicta*, the portion of *Lentz* upon which relies is

inapposite.

To begin, *Lentz* was a conditional certification case, not a summary judgment case.  *Id.* at

666.  The *Lentz* court denied conditional certification because the plaintiff failed to meet his

burden of showing that he was similarly situated to other individuals who wished to participate

in a collective action. *Id.* at 668–70.  The holding of *Lentz* did not decide the merits of the plaintiff's claims and does not support Luby's' summary judgment argument.

In *dicta*, the *Lentz* court expressed concern that the plaintiff alleged a set of facts which - even if true – had "never been determined as a violation of the FLSA[.]"  *Id.*, at 670.  In other words, the *Lentz* court felt the plaintiff had not alleged a violation of the FLSA at all.  In contrast, Congress, the courts and the Department of Labor *have all determined* dishwashers, kitchen personnel, and janitors *cannot* participate in tip pools.[9]  Thus, Plaintiffs' allegations and evidence – if accepted by the trier of fact - establish a clear violation FLSA.

Also in *dictum*, the *Lentz* court questioned whether "agency interpretations" regarding customer interaction would require deference.  *Lentz*, 491 F.Supp.2d  at n. 5.  However, even where not controlling, the interpretations and opinions of the Secretary of Labor are entitled to substantial weight.  *Hodgson v. Frisch's Dixie, Inc.*, 1971 WL 837, at *5 (W.D.Ken.1971) (citing *U. S. v. American Trucking Assns.*, 310 U. S. 534, 549 (1940); *Roland Electric Co. v. Walling,* 326 U. S. 657, 676 (1946); *Idaho Sheet Metal Works v. Wirtz,* 383 U. S. 190, 205 (1966).  Moreover, the *Lentz* court stated the "ultimate decisions on interpretations of the [FLSA] are to be made by the courts."  *Lentz*, 491 F.Supp.2d  at n. 5.  (citations omitted).

Both before and after *Lentz*, courts have required sufficient customer interaction in order for a job classification to participate in a tip pool.  *See, e.g., Myers*, 192 F.3d at 550; *Kilgore*, 160 F.3d at 301; *Wajcman*, 2008 WL 783741 at *5; *Jing Fong Restaurant*, 503 F.Supp.2d at 711.  In fact, *Lentz* relies on *Myers* and *Kilgore* as authority.  Therefore, even under *Lentz*, customer

---

[9]        It is worth noting that *Lentz* cites *Kilgore* and a Department of Labor Opinion Letter as reflecting "congressional intent" with respect to which employees are eligible to participate in a tip pool.  *Lentz*, 491 F.Supp.2d at 471 *citing* DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997).  *Both* these authorities confirm "janitors" and "dishwashers" are "employees who do **not** customarily and regularly receive tips" and cannot participate in tip pools.  DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997) (emphasis added); *Kilgore,* 160 F.3d at 301.

interaction is a relevant factor in determining whether an employee is one "who customarily and regularly receive tips."

Perhaps more to the point, the question at this summary judgment stage is whether "as a factual matter, the actual employment functions of the [service attendants] … qualify their job classification" for participation in a tip pool.  *Myers*, 192 F.3d at 550.  Direct customer interaction and service are the hallmarks of such positions.  *Wajcman*, 2008 WL 783741, at *4 (given the occupational "restriction on the composition of tip pools, the inquiry properly looks to both the quantity and quality of customer interaction.").  Even employees whose "job titles" would imply proper participation in a tip pool have been held ineligible if their duties do not include the requisite customer interaction.  *See, e.g., Kilgore,* 160 F.3d at 302 *citing Elkins v. Showcase, Inc.*, 704 P.2d 977, 989 (Kan. 1985) (bartenders who "were located behind a wall so they did not have any contact with customers and were not in a position to receive tips" could *not* participate in a tip pool).

Plaintiffs' evidence establishes that service attendants never have any customer interaction.  De La Garza Dec., ¶ 3; Hope Dec., ¶ 5; Lineberry Dec., ¶ 5; Plewinski Dec., ¶ 5; Second De La Garza Dec., ¶ 6.  Luby's appears to concede this fact.  Instead, the evidence shows service attendants spend their time washing dishes, cleaning the kitchen area, and servicing the public restrooms.  Thus, even if customer interaction were not required, Plaintiffs have shown that service attendants are akin to dishwashers, janitors and/or other kitchen workers who cannot participate in tip pools under the FLSA.  Given the evidence before the Court, the question of whether Luby's' service attendants are proper participants in a tip pool should be decided based on the facts adduced through full discovery and, ultimately, at trial. *Jing Fong Restaurant*, 503

F.Supp.2d at 711 (determination of whether dish transportation workers had sufficient customer interaction to properly participate in a tip pool is a question of fact to be resolved at trial).

      3.    Luby's Failed to Show Service Attendants Perform Primarily Tipped Work

An employee is not "customarily and regularly tipped" simply because the employee is assigned duties which might otherwise be assigned to a waiter. *See*, *Myers*, 192 F.3d at 548-49 (defendant attempted justify kitchen workers' inclusion in tip pool by alleging that their performance of a task which servers otherwise would discharge increased the total number of tables a server could tend and escalated potential tip earnings). Luby's, nonetheless, suggests service attendants are properly included in the tip pool because their duties "enabl[e] the wait staff to serve additional tables, deliver enhanced service and generate greater tips than they would be able to do without the 'service attendant/busser' support." *See* Luby's' Motion, Exhibit B, ¶ 8. The *Myers* court rejected this argument "[b]ecause the [employees] abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work." *Id.* at 550. In fact, the *Myers* court opined that a contrary finding would have been "clear error." *Id.*

The Department of Labor has determined that even a "customarily and regularly tipped" employee will lose his "tipped status" if the employee is required to spend more than twenty percent (20%) of his time engaged on non-tipped duties. *See* 29 C.F.R. § 531.56(e) & DOL Field Operations Handbook § 30d00(e).[10] The Western District of Missouri aptly summarized the Department of Labor's analysis on this point. Each of a tipped employee's duties must fall into one of three categories. *Fast*, 502 F.Supp.2d at 1002. The first category includes purely tip

---

[10]    Again, the Secretary of Labor's opinions and interpretations are not controlling but are entitled to substantial weight. *Frisch's Dixie, Inc.*, 1971 WL 837 at *5 (citing *American Trucking Assns.*, 310 U. S. at 549; *Roland Electric,* 326 U. S. at 676 (1946); *Idaho Sheet Metal Works,* 383 U. S. at 205.

producing duties, and an employer may take the tip credit for any employee time that falls within this first category. *Id.* In the second category, an employee's duty is not tip producing but is incidental to one of the employee's tip producing duties. *Id.* If the duty falls within the second category, then the employer may take the tip credit for the time the employee spends on incidental duties so long as the incidental duties do not exceed 20 percent of the employee's overall duties. *Id.* The third category consists of duties that are unrelated to any of the employee's tip producing duties. *Id.* An employer may not take the tip credit for any employee time that falls within the third category. *Id.* Thus, assuming *arguendo* that service attendants perform *some* duties that might be customarily tip-producing, it is incumbent upon Luby's as the employer seeking summary judgment to show conclusively that service attendants spend *at least* eighty percent (80%) of their time performing such duties.

Despite Luby's attempts characterize the service attendants as equivalent to bussers, the evidence before the Court reveals service attendants perform duties that would patently exclude them from tip pool eligibility (*e.g.*, dishwashing duties, janitorial duties).[11] Luby's failed to present the Court any evidence regarding the quantum of time service attendants spend on these clearly ineligible duties in relation to their allegedly eligible duties. Moreover, Luby's proposed expert testified Luby's *wait staff* does "more of the work normally reserved for bussers such as … providing beverage refills for guests." *See* Luby's MSJ, at Exhibit B, p. 6.

Thus, Luby's cannot meet its burden of establishing as a matter of law that service attendants perform primarily tipped duties (let alone spend less than twenty percent (20%) of their time on non-tipped duties). *See*, *Fast*, 502 F.Supp.2d at 1004. Indeed, Luby's' service attendants are far more akin to dishwashers, janitors and/or kitchen helpers, *none* of whom can

---

[11]    Therefore, Luby's bald assertion that Plaintiffs "can point to no duty performed by Luby's service attendants that are not within those traditionally associated with a busser or that would exclude them from being characterized as employees with duties equivalent to those of a busser" is manifestly false.

15

participate in tip pools.  *See, e.g.,* Senate Report 93-690 (dishwashers, janitors); Exhibit 10, Department of Labor, Bureau of Labor Statistics, Bulletin 2335 (August 1989) (kitchen helpers). However, because the relevant facts are in dispute, Luby's motion for summary judgment should be denied.

### IV. CONCLUSION

Luby's requires its waiters to share their tips with employees who spend their time cleaning dishes, cleaning restrooms and cleaning the kitchen.  At the very least, material questions of fact exist regarding whether these kitchen workers may participate in a valid tip pool.  Because Luby's must establish conclusively that these kitchen workers are eligible to participate in a tip pool in order to prevail on its affirmative defense, summary judgment should be denied.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

**/S/ Richard J. Burch**
By:_____
Richard J. Burch
State Bar No. 24001807
S.D. of Texas No. 21615
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile

**Of Counsel:**
**DEBES LAW FIRM**
Robert R. Debes, Jr.
State Bar No. 05626150
S.D. Tex. No. 12308
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
(713) 623-0900 – Telephone
(713) 623-0951 – Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I served a true and correct copy of *Plaintiffs' Response to Luby's Motion for Summary Judgment* upon all opposing parties by and through their attorneys of record via the Southern District's CM/ECF system on this the 25th day of April, 2008.

**/S/ Richard J. Burch**

_____

Richard J. Burch