# Industry Wage Survey: Hotels and Motels, June–July 1988



U.S. Department of Labor
Bureau of Labor Statistics
August 1989

Bulletin 2335



**Exhibit 10**

# Hotels and Motels, June–July 1988

## Earnings and benefits

Average employer-paid wages of waiters and waitresses in hotels and motels ranged from $2.46 to $5.86 an hour among 18 metropolitan areas surveyed in June–July 1988 (table 1).[1] Wages, however, usually accounted for less than one-half of the total earnings of these workers. Customer tips, which also varied widely by area, made up the remainder. Customer tips also contributed significantly to the earnings of three other occupations in the industry—waiters' and waitresses' assistants (busboys and busgirls), bellpersons, and public bartenders.[2]

In each area, waiter or waitress was the most populous of the tipped occupations. Though employer-paid wages of waiters and waitresses generally were lower than those paid the other three tipped occupations, customer tips contributed more to the total earnings of waiters and waitresses than to the earnings in the other jobs (see table 38).[3]

Separate earnings data were developed for waiters and waitresses by predominant place or type of service: Cocktail lounges, full-course restaurants, or other (including counter, tray, and room service and other than full-course restaurants). Employer-paid wages typically were highest for waiters and waitresses classified as "other." However, these servers usually averaged less in tip earnings when compared with those in cocktail lounges and full-course restaurants. Among the six areas for which all three classifications could be compared, total earnings (employer-paid wages plus tips) were highest for waiters and waitresses in full-course restaurants in Kansas City, Miami-Hialeah, and Philadelphia; highest for those in cocktail lounges in Dallas and New Orleans; and highest for "other" servers in Houston.

Employer-paid wages of waiters' and waitresses' assistants averaged between $3.63 and $6.17 an hour. Although these average wages were higher than those received by waiters and waitresses, customer tips were lower, accounting for one-fourth or less of total hourly earnings in most areas. As a result, total earnings of waiters and waitresses exceeded those of their assistants in each of the seven areas for which comparisons could be made.

Public bartenders averaged between $3.98 and $11.39 an hour in employer-paid wages. In the 12 areas where information on both wages and tips was available, total earnings averaged between $6.72 and $15.55 an hour. Tips usually accounted for about one-third of these totals.

Customer tips also contributed substantially to the earnings of bellpersons, whose employer-paid wages averaged from $2.95 to $7.27 an hour. In the seven areas providing data, tips contributed between one-third and one-half of bellpersons' cash earnings.

Nine occupations not customarily tipped also were studied (text table 1). The highest paid workers were stationary engineers, with area averages ranging from $8.43 to nearly $20 an hour. At the other end of the pay scale in most areas were lodging quarters cleaners; their averages ranged from $3.94 to $9.91 an hour.

The 13 surveyed occupations, accounting for one-half to seven-tenths of total nonsupervisory, nonoffice employment in each area except Atlantic City,[4] revealed differences in occupational pay patterns among the areas studied. Workers in San Francisco or New York received the highest average employer-paid wages for each of the occupations, more than twice the average in the lowest paying area. Although no single area consistently reported the lowest average wage, Houston had five jobs with the lowest average; Kansas City, three jobs; and Miami-Hialeah, three jobs.

Wage spreads for individual jobs also varied among the areas. In Detroit, for example, employer-paid wages for short-order cooks ranged from $5 to $6.75 an hour. The range in San Francisco was considerably wider—from $6 to $13.50. Similar differences in occupational wage spreads were found even within the individual areas (tables 2–37).

Among areas and occupations where comparisons could be made, employer-paid wages generally were higher in June–July 1988 than in July–September 1983. (The few

---

[1] See appendix A for scope and method of survey and for definitions of terms used in this report. Except where specifically noted, wage data in this bulletin exclude tips and the value of free meals, rooms, and uniforms, if any were provided, and premium pay for overtime and for work on weekends, holidays, and late shifts. Service charges added to customers' bills and distributed by employers to employees were considered as wages, rather than tips, and were included.

The term "metropolitan areas," as used in this bulletin, refers to Metropolitan Statistical Areas or Primary Metropolitan Statistical Areas as defined by the U.S. Office of Management and Budget through October 1984.

[2] For purposes of this survey, "tipped employees" include waiters and waitresses and their assistants, bellpersons, and public bartenders. The Fair Labor Standards Act (FLSA) defines "tipped employees" as those who customarily and regularly receive more than $30 a month in tips. Under the provisions of FLSA, an employer may credit tips actually received by employees up to 40 percent of the applicable minimum wage. Employers may also credit the cost, or fair value, of providing meals and lodging in meeting minimum wage requirements.

For occupational descriptions, see appendix B.

[3] See the section in appendix A, "Customer tips," for the method used to estimate average tips for selected jobs.

[4] In Atlantic City, the proportion was about one-third, reflecting the large number of workers involved in gaming operations not represented by the survey jobs.

1

Text table 1. Ranges of employer-paid wages for selected occupations, hotels and motels, 18 metropolitan areas, June-July 1988

| Occupation | Average hourly wages | | | | Midrange of area pay levels[1] |
|---|---|---|---|---|---|
| | Lowest paying | | Highest paying | | |
| | Area | Rate | Area | Rate | |
| **Tipped occupations** | | | | | |
| Bellpersons | Kansas City | $2.95 | New York | $7.27 | $3.26 - $4.49 |
| Public bartenders | Miami-Hialeah | 3.98 | San Francisco | 11.39 | 4.92 - 6.59 |
| Waiters and waitresses | Houston | 2.46 | San Francisco | 5.86 | 2.73 - 4.36 |
| Cocktail lounges | Houston | 2.10 | San Francisco | 5.78 | 2.45 - 4.31 |
| Full-course restaurants | Houston | 2.24 | San Francisco | 5.72 | 2.54 - 4.31 |
| Other | Kansas City | 3.21 | San Francisco | 6.19 | 3.51 - 4.98 |
| Waiters' and waitresses' assistants | Miami-Hialeah | 3.63 | San Francisco | 6.17 | 3.78 - 5.27 |
| Full-course restaurants | Chicago | 3.57 | San Francisco | 6.17 | 3.75 - 5.09 |
| Other | Miami-Hialeah | 3.47 | Boston | 7.29 | 3.95 - 6.15 |
| **Nontipped occupations** | | | | | |
| House porters | Houston | 4.12 | New York | 9.80 | 4.53 - 6.32 |
| Lodging quarters cleaners | Houston | 3.94 | New York | 9.91 | 4.33 - 6.10 |
| Room clerks | Kansas City | 4.97 | New York | 9.70 | 5.42 - 6.63 |
| Service bartenders | Dallas | 4.87 | San Francisco | 12.23 | 5.19 - 7.85 |
| Kitchen helpers | Houston | 4.01 | New York | 9.60 | 4.53 - 6.74 |
| Restaurant cooks | Kansas City | 5.64 | San Francisco | 11.95 | 6.34 - 8.43 |
| Short-order cooks | Denver | 5.22 | San Francisco | 9.81 | 5.89 - 7.45 |
| General maintenance workers | Houston | 6.28 | New York | 10.42 | 6.87 - 8.55 |
| Stationary engineers | Miami-Hialeah | 8.43 | San Francisco | 19.99 | 9.49 - 14.98 |

[1] Among the areas compared, one-fourth reported occupational averages the same as or more than the higher rate shown, and one-fourth reported averages the same as or less than the lower rate. Occupational data were reported by all areas except for other waiters' and waitresses' assistants and service bartenders, each with 16 areas reporting; and short-order cooks and stationary engineers, each with 15 areas reporting. Checkout cashiers are not shown because only 6 areas reported publishable data.

declines were concentrated in tipped occupations.) Increases in average wage levels varied widely by area and occupation. Within individual occupations, median increases in area wage levels, however, typically ranged between 12 and 20 percent (text table 2).[5] The wage and salary component of the Bureau's Employment Cost Index for service workers rose 21 percent over approximately the same 5-year period.

Paid holidays, commonly 6 to 9 days annually, were provided to at least nine-tenths of the full-time nonsupervisory, nonoffice workers in all areas except Detroit, where four-fifths received paid holidays (table 41). Provisions were somewhat better in New York, where three-fourths of the workers received 10 or 11 days, and in Washington, where slightly over one-third received 10 days.[6] In Denver and Oakland, on the other hand, two-fifths of the workers received fewer than six full days annually.

Virtually all full-time workers were in hotels and motels providing paid vacations after qualifying periods of service (table 42). Typical vacation provisions were 1 week of pay after 1 year of service, 2 weeks after 2 years, and 3 weeks after 8 or 10 years. A majority of the workers in 12 areas could receive at least 4 weeks of vacation pay after 20 years of service.

Workers usually were offered a variety of insurance and health plans in most areas studied (table 43). The typical benefits included life insurance; hospitalization, surgical, and medical insurance; sickness and accident insurance and/or sick leave; dental insurance; and drug abuse treatment plans. With a few exceptions—New York, Oakland, and San Francisco—vision and hearing care plans generally were not available to a majority of the workers. Long-term disability insurance, the least common of the benefits studied, applied to one-fourth or less in all areas.

As part of these benefit offerings, membership in health maintenance organizations (HMO's) was available to at least one-half of the workers in eight areas. In 3 of the 8—Los Angeles, Oakland, and San Francisco—the proportions were four-fifths or more. Table 44 presents the proportions of workers participating in HMO's, as well as the other health care plans.

The extent of employee participation in funding the various health plans and life, accidental death and dismemberment, and sickness and accident insurance varied by area. In Atlantic City, New York, Oakland, and San Francisco, the employer typically paid the full cost of the plans. Jointly funded plans were more common in the remaining areas. The

---

[5] For an account of the earlier study, see *Industry Wage Survey: Hotels and Motels, July-September 1983*, BLS Bulletin 2227 (1985). Comparisons of 1983 and 1988 survey findings are affected by new definitions of metropolitan areas introduced by the U.S. Office of Management and Budget. In some instances, the changes precluded comparisons over time (see text table 2, note 2).

[6] Hereafter, the terms "workers" or "work force" refer to full-time nonsupervisory, nonoffice workers.

Text table 2. Median increases in area wage levels for selected occupations in hotels and motels, 14 metropolitan areas, July-September 1983 to June-July 1988

| Occupation | Median percent increase[1] | Number of areas compared[2] |
|---|---|---|
| **Tipped occupations** | | |
| Bellpersons | 14 | 12 |
| Public bartenders | 12 | 13 |
| Waiters and waitresses: | | |
|   Cocktail lounges | 14 | 13 |
|   Full-course restaurants | 13 | 13 |
| Waiters' and waitresses' assistants: | | |
|   Full-course restaurants | 16 | 13 |
|   Other | 27 | 11 |
| **Nontipped occupations** | | |
| House porters | 19 | 14 |
| Lodging quarters cleaners | 15 | 14 |
| Room clerks | 17 | 14 |
| Service bartenders | 20 | 11 |
| General maintenance workers | 19 | 12 |
| Stationary engineers | 16 | 13 |

[1] Among the areas compared, one-half reported changes in employer-paid wages at the same or higher than the percent shown and one-half reported changes at the same or lower than the percent shown.

[2] Changes in employer-paid wages were compared for 14 of the 18 areas. Two areas in the 1983 study (Dallas–Fort Worth and San Francisco–Oakland) were redefined as four separate areas by the Office of Management and Budget. Of these, Dallas, Oakland, and San Francisco were studied in 1988. Also, in 1988, San Diego was added to the survey areas.

cost of long-term disability insurance, a benefit with a relatively low incidence, often was paid wholly by the employer.

Retirement plans (pensions other than Social Security) covered at least nine-tenths of the workers in Atlantic City, New York, and San Francisco; between three-fifths and one-half of those in eight other areas; and one-third to two-fifths in the remaining seven areas (table 43). Pension plans providing lifetime annuities were available to a majority of the workers in nine areas; in two areas, Detroit and Oakland, all of the plans were paid for entirely by the employers. Lump-sum retirement plans, reported in 15 areas, covered two-fifths of the workers in Dallas; about one-fifth in Denver, Houston, Kansas City, and Philadelphia; and less than one-tenth in 8 of the remaining 10 areas. None of these lump-sum plans required employee contributions.

Information on meal provisions was obtained separately for seven occupations: Public bartenders, waiters and waitresses in cocktail lounges and in full-course restaurants, waiters' and waitresses' assistants in full-course restaurants, kitchen helpers, restaurant cooks, and room clerks. For each of these jobs, employers generally provided at least one free meal daily to a majority of the workers (table 45). In San Francisco, three-fifths or more of the workers in each job except room clerk received at least two meals a day.

About four-fifths of the full-time workers in the survey were covered by formal provisions for jury-duty and funeral-leave pay (table 46). Severance pay in the event of job loss was reported in 14 of the 18 areas. In New York, nearly two-fifths of the employees were covered by severance pay plans; in Dallas, Houston, and Philadelphia, the proportion slightly exceeded one-fifth; and it dropped to under one-tenth in most of the remaining areas that reported severance pay plans.

When employees were required to wear uniforms, employers most often furnished and cleaned the uniforms (table 46). In Atlanta and Houston, however, approximately half of the workers were in establishments that only furnished uniforms.

### Industry characteristics

This 18-area study covered hotels, motor hotels, motels, and tourist courts primarily engaged in providing lodging, or lodging and meals, to the general public. This survey included establishments which were in operation for 9 months or more a year and employed at least 20 workers. In Atlantic City, hotel-motel establishments deriving most of their revenue from gambling operations were also included.

The 2,000 hotels and motels within the scope of the survey had a total work force of 316,112 workers (table A-1). Full-time nonsupervisory, nonoffice employees accounted for seven-tenths of these workers. In June-July 1988, nearly one-half of the total work force was concentrated in 5 of the 18 areas—Atlantic City, with approximately 48,000 workers, New York (34,000), Washington (25,000), Chicago (24,000), and Los Angeles-Long Beach (25,000). Total employment in the remaining areas ranged from about 19,000 in Atlanta to 4,000 in Oakland.

Since a similar study in 1983, hotel and motel employment increased in 12 of the 14 areas for which comparisons could be made. The largest gains were in Atlantic City and Boston; in both these areas, total employment in 1988 was more than 50 percent higher than that reported 5 years earlier. Small decreases were recorded in Chicago and Houston.

Full- and part-time food service employees (including bar, kitchen, restaurant, and room service workers) accounted for one-third of the nonsupervisory, nonoffice work force in the survey. Other full- and part-time workers accounted for the remaining two-thirds.

Part-time employees made up 14 percent of all nonsupervisory, nonoffice employees. As shown in table 47, the proportion of part-time workers varied from less than 10 percent in Atlantic City, Dallas, Miami-Hialeah, and San Francisco to between 25 and 30 percent in Boston, Philadelphia, Detroit, and Oakland.

Weekly work schedules of 40 hours were in effect for almost one-half or more of the full-time workers in 14 of the 18 areas (table 39). In Atlantic City and New York, a 35-hour week prevailed; a 37.5-hour week was the most common schedule in Oakland and San Francisco. In Los Angeles-Long Beach, most of the workers were covered by 37.5-or 40-hour schedules.

Information on scheduled weekly hours was collected

3

separately for four occupations: Bellpersons, kitchen helpers, room cleaners, and waiters and waitresses (table 40). In all but four areas, the proportion of waiters and waitresses working fewer than 35 hours a week was greater than that for each of the other three jobs. In Atlanta, Kansas City, and San Diego, about one-half of the waiters and waitresses were scheduled to work less than 35 hours weekly; at the other extreme—in Atlantic City, Miami-Hialeah, Oakland, and San Francisco—the proportion dropped to less than one-tenth.

The hotels and motels included in the study varied widely in size. While the larger establishments (those with at least 500 workers) accounted for 36 percent of total nonsupervisory, nonoffice employees covered by the survey, they constituted only 5 percent of the total facilities. Smaller hotels and motels (those with fewer than 100 workers) accounted for 60 percent of the facilities but only 16 percent of the work force.

In all but one area (Atlanta), nine-tenths or more of the workers surveyed were in hotels and motels with eating facilities. These facilities were usually operated by the hotels and motels, but in each area, a small proportion of the workers were in establishments that contracted out the restaurant or other eating facility.

Slightly fewer than half of all the nonsupervisory, nonoffice employees were in hotels and motels with collective bargaining agreements covering a majority of such workers (table 47). The proportions varied from at least four-fifths in Atlantic City and New York to less than one-tenth in Atlanta, Dallas, and Kansas City. No hotel or motel studied in the Houston area operated under a labor-management agreement. The Service Employees' International Union and the Hotel and Restaurant Employees Union, both AFL-CIO affiliates, were the major unions in all areas except New York, where the New York Hotel and Motel Trades Council (AFL-CIO) was predominant.

# Appendix B. Occupational Descriptions

The primary purpose of preparing job descriptions for the Bureau's wage surveys is to assist its field representatives in classifying into appropriate occupations workers who are employed under a variety of payroll titles and different work arrangements from establishment to establishment and from area to area. This permits the grouping of occupational wage rates representing comparable job content. Because of this emphasis on interestablishment and interarea comparability of occupational content, the Bureau's job descriptions differ significantly from those used in individual establishments or those prepared for other purposes. In applying these job descriptions, the Bureau's field representatives were instructed to exclude working supervisors, apprentices, learners, beginners, trainees, and handicapped, temporary, and probationary workers. However, part-time workers employed on a regular basis were included if they matched one of the job descriptions.

The titles and 4-digit codes below the job titles in this appendix are taken from the 1980 edition of the *Standard Occupational Classification Manual* (SOC), issued by the U.S. Department of Commerce, Office of Federal Statistical Policy and Standards.

In general, the Bureau of Labor Statistics occupational descriptions are much more specific than those found in the SOC manual. Therefore, in comparing the results of this survey with other sources, differences in occupational definitions should be taken into consideration.

## Food Services

### Bartender
(5212: Bartender)

Mixes and serves alcoholic and nonalcoholic drinks, following standard recipes. Serves wines and draught or bottled beer. May collect money for the drinks served; order or requisition ingredients and supplies; arrange bottled goods and glasses about the bar to create an attractive display; or wash glasses, bar, and equipment.

For purposes of this study, bartenders were classified according to whether they primarily worked at a service bar, preparing drinks to be served in guestrooms or dining rooms; or at a public bar, serving drinks directly to customers, as follows:

*Public bar*
*Service bar*

### Kitchen helper
(5217: Kitchen worker, food preparation)
(5219: Miscellaneous food and beverage preparation occupation)

Performs any combination of the following duties to maintain kitchen work areas and restaurant equipment and utensils in a clean and orderly condition: Sweeps and mops floors; washes worktables, walls, refrigerators, and meat blocks; segregates and removes trash and garbage; washes pots, pans, and trays by hand; scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine; places silver in revolving burnishing-machine tumbler, dips it in chemical solutions, holds it against buffing wheel, and rubs it with cloth to remove tarnish and restore luster; and transfers supplies and equipment between storage and work areas by hand or handtruck.

### Restaurant cook
(5214: Cook, except short order)

Performs any combination of the following duties to prepare and cook soups, meats, vegetables, desserts, and other foodstuffs for consumption in hotels, motels, and restaurants: Washes, peels, cuts, and shreds vegetables and fruits to prepare them for use; cuts, trims, and bones meat prior to cooking; bakes breads, rolls, cakes, and pies; and carves meats, portions food on serving plates, adds gravies and sauces, and garnishes servings to fill orders.

May be designated according to meal cooked or shift worked, such as dinner cook; or according to food item prepared, such as roast cook; or according to method of cooking, such as broiler cook. May substitute for and relieve or assist other cooks during emergencies or rush periods; or supervise other kitchen workers.

Second cooks were excluded when the term referred to a *sous chef* who acts as assistant to the chef, executive chef, or supervising chef.

### Short order cook
(5215: Short order cook)

Prepares and cooks to order all kinds of foods which require only a short time to prepare. May carve meats and fill orders from a steamtable; prepare sandwiches; prepare salads