UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PLEWINSKI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-07-3529 |
| | § | |
| LUBY'S INC; dba LUBY'S, | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT LUBY'S, INC.'S MOTION FOR SUMMARY JUDGMENT

This case arises out of alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA").  Now before the Court is the Motion for Summary Judgment by Defendant Luby's, Inc. ("Defendant") (Doc. 18).  For the following reasons, the Motion is **DENIED**.

### I. Background

The named Plaintiff in this action, Daniel Plewinski, was a server at one of Defendant's restaurants.  (Plewinski Dep. 8).  He alleges that Defendant violated the minimum wage provisions of the FLSA by requiring servers to contribute a portion of their tips to a tip pool, from which some money was distributed to "service attendants."  Defendant contends that service attendants are the same as bussers, who are appropriately included in the tip pool. Plaintiff alleges that service attendants are not bussers.

At Defendant's cafeterias, undoubtedly familiar to all Texas residents, customers walk through a serving line to choose their food.  Customers then seat themselves in the dining area, and they pay either at the end of the serving line or at a cash register at the exit.  "Servers" assist customers in the dining area by greeting them at the table, refilling drinks, and bringing condiments and other additional items as requested.  (Plewinski Dep. 43-4; O'Leary Aff. ¶ 4.)

Servers also "pre-bus" the tables by removing dishes as customers finish with them. (O'Leary Aff. ¶ 5.) These dishes are taken to a dish return room or a bussing station. (Plewinski Dep. 10.) Servers wipe tables and carry dirty trays to the dish return room. (Plewinski Dep. 36.)

Plaintiff and Defendant agree that the "service attendants" take the dirty dishes from the bussing stations in the dining room or from the dish return room to the dish room, where they are washed. (O'Leary Aff. ¶ 6; 1st De La Garza Aff. ¶ 3.) Defendants also allege that the service attendants help the servers to bus and clean the tables, chairs, and floors; to remove full bus carts and return empty bus carts; roll silverware; and clean restrooms. (O'Leary Aff. ¶ 7.) However, Defendant alleges that the primary duty of service attendants is to collect dirty dishes from the dining room or dish return area and take them to the dish room. (O'Leary Aff. ¶ 8.) Plaintiff alleges that Defendant's procedures make no mention of service attendants helping to bus tables and that service attendants do not interact with customers or bus tables. (Plewinski Aff. ¶ 5; 1st De La Garza Aff. ¶ 3; Hope Aff. ¶ 4.) Plaintiff alleges that service attendants primarily handle dishes in the dish return area and perform other janitorial tasks. (Lineberry Aff. ¶ 5.)

Servers and service attendants are paid $2.13 an hour plus tips. (Plewinski Dep. 49.) Servers turn 15% of their tips over to Defendant. (Plewinski Dep. 50.) Service attendants receive those funds. (O'Leary Aff. ¶ 11.)

If this tip pooling arrangement is proper, then Plaintiff's claims must be dismissed, and it is unnecessary for the Court to consider Plaintiff's Motion for Conditional Class Certification.

## II.  Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "'If the movant bears the burden of proof on an issue . . . [it] must establish beyond peradventure *all* of the essential elements' of the claim or defense." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1994 (5th Cir. 1986)). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005); *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 202 (1986).

## III. Analysis

Employers may implement mandatory tip pooling "among employees who customarily and regularly receive tips" and still take advantage of the "tip credit" that allows them to pay a sub-minimum wage. 29 U.S.C. § 203(m). The Department of Labor's Field Operations handbook lists five occupations that "have been recognized as falling within the eligible category" for mandatory tip pooling arrangements: "(1) waiters/waitresses (2) bellhops (3) counter personnel who serve customers (4) busboys/girls (server helpers) (5) service bartenders." Department of Labor, Field Operations Handbook 30d04(a) (June 30, 2000) ("Handbook"). The Handbook further states that "[t]ipped employees may not be required to share their tips with

employees who have not customarily and regularly participated in tip pooling arrangements." Handbook, 30d04(c).  The Handbook lists the following occupations as ineligible:  janitors, dishwashers, chefs/cooks, and laundry room attendants.  *Id*; *see also* DOL Wage & Hour Division Opinion Letter, 1997 WL 998047 (Nov. 4, 1997).  In general, an employee's classification is based on how that employee spends the majority of his or her time.  An employee who spends "a substantial amount of time (in excess of 20 percent)" doing a non-tipped occupation should not be considered a tipped employee, at least for the time spent doing the non-tipped work.  Handbook, 30d00(e).  A tip pool is invalid for tip credit purposes if non-eligible employees receive tips from the pool.  *Lentz v. Sparky's Restaurant II, Inc*., 491 F. Supp. 2d 663, 671 (N.D. Tex. 2007); DOL Wage & Hour Division Opinion Letter, 1997 WL 998047 (Nov. 4, 1997).  If the tip pool is invalid, the employer may not take a tip credit and must pay the employees the full minimum wage.

In deciding whether an employee may be included in a tip pool, the Court considers the overall nature of the employee's duties as well as the level of interaction that employee has with customers.  *See Roussell v. Brinker Int'l*, 2008 WL 2714079, at *10 (S.D. Tex. 2008); *Townsend v. BG-Meridian, Inc*., No. Civ-04-1162-F, 2005 WL 2978899, at *6 (W.D. Okla. Nov. 7, 2005); Department of Labor Wage & Hour Division Opinion Letter, 1997 WL 998047 (Nov. 4, 1997) (finding that an employee's classification as a tipped employee "will be determined on the basis of his or her activities over the entire workweek").

Here, it appears from the undisputed facts that service attendants, at the time Plaintiff was employed by Defendant, engaged in at least some duties traditionally done by bussers (i.e., scraping and stacking dirty dishes); did not engage in all of the traditional activities of bussers

(i.e., garnishing foods and serving food to customers); and engaged in some activities not traditionally done by bussers (i.e., cleaning restrooms). (1st Barth Aff. ¶ 8.)

What remains unclear is the percentage of time spent by the service attendants on various activities. The fact that an employee occasionally goes on to the dining room floor or responds to customer requests does not, by itself, make that employee a tipped employee. *See Wajcman v. Investment Corp. of Palm Beach*, No. 07-80912-CIV, 2008 WL 783741, at *4 (S.D. Fla. Mar. 20, 2008) (noting that the record should contain evidence of the time spent in customer interaction, not merely evidence that the employee occasionally engages in such activity); DOL Wage & Hour Division Opinion Letter, 1997 WL 1049720 (Nov. 4, 1997).

Plaintiff's affidavit states that "kitchen workers," in which he apparently included service attendants, did not go into the dining room. (Plewinski Aff. ¶ 4 3/27/08.) In contrast, Barth's second affidavit states that in his visits to four of Defendant's cafeterias he observed service attendants entering the dining room. (Barth 2nd Aff. ¶ 7.) John O'Leary, the Director of Operational Development for Defendant, states in his affidavit that service attendants remove dishes from both the dining room and dish return area. (O'Leary Aff. ¶ 6; *see also* Benitez Aff. ¶ 5.) In an affidavit submitted by Plaintiff, Donald Lineberry, another server at a different location, stated that servers usually took dishes to the dish return room or took the full tub of dishes from the bussing station in the dining room to the dish return room, but *occasionally* service attendants would remove the tub. (Lineberry Aff. ¶ 6.) Defendant has stated that service attendants spend about 80% of their time bussing in the dining room and in the dish return area. However, this statement is insufficient because taking dishes from the dining room is an activity more like that of a busser and one that could generate customer interaction, while moving dishes from the dish return area to the dish room involves no customer interaction and is an activity

more like that of a dishwasher.  Another fact issue in this case is whether service attendants only enter the dining room to remove dishes from the "bus stations" where servers have already placed the dirty dishes after removing them from the tables, or whether service attendants spend a significant amount of time removing dirty dishes from the tables themselves.  The O'Leary and Lineberry affidavits state that service attendants enter the dining room to remove dishes from the bus stations.  This activity is more like that of a dishwasher, who has no customer interaction, than that of a busser, who removes dishes directly from the customer's table.  Although Defendant has submitted a video of operations at one of its locations, this after-the-fact recording, created by Defendant, carries no more weight than the affidavits submitted by the Parties.  A one-day snapshot does not conclusively establish the average amount of time spent by an employee on a particular task, and some aspects of the restaurant's operations appear to have changed since Plaintiff's employment.  (Plewinski Dep. 17-27.)

In *Roussell v. Brinker Int'l, Inc*., 2008 WL 2714079, at *2 (S.D. Tex. 2008), the court faced a similar factual situation.  In that case, some of the defendant's witnesses testified that "quality assurance" employees sometimes took food to customers at their tables, but the plaintiff's witnesses and other defense witnesses testified that these employees rarely or never interacted with customers.  *Id*.  There, the court declined to grant summary judgment because material questions of fact remained as to the conduct of the quality assurance employees.

Likewise, this Court cannot grant summary judgment in this case because material questions of fact remain as to the tasks actually performed by service attendants and the typical amount of time allotted to each task.  Before these facts are established, the Court cannot decide whether Defendant's service attendants qualify for a mandatory tip pool.

## IV.  Conclusion

For these reasons, Defendant's Motion for Summary Judgment is **DENIED**.  Each Party if to bear its own costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

DONE this the **1st day of October, 2008, at Houston, Texas.**

_____
Samuel B Kent
United States District Judge