IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PLEWINSKI, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:07-CV-03529 |
| VS. | § § | |
| LUBY'S, INC. D/B/A LUBY'S, | § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

### LUBY'S, INC'S MOTION TO RECONSIDER THIS COURT'S RULING AND ANALYSIS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Luby's, Inc. ("Luby's") files this Motion to Reconsider this Court's ruling and analysis on Defendant's Motion for Summary Judgment and in support thereof would show as follows:

*Legal Standard for Motion to Reconsider*

1.  Federal Rules of Civil Procedure 59 governs any motion for reconsideration. *See* Fed. R. Civ. P. 54. A court retains the power to revise any interlocutory order before the entry of judgment adjudicating all the parties' claims, rights and liabilities. *Id.*; *T-M Vacuum Prods., Inc. v. TAISC, Inc.*, 2008 WL 2785636 (S.D. Tex. Jul. 16, 2008). Although the general rule is that motions for reconsideration will not be considered when filed more than ten days after the judgment at issue is entered, this deadline does not apply to the reconsideration of interlocutory orders. *Id.* A court may consider a motion to reconsider an interlocutory order so long as the motion is not filed unreasonably late. *Id.*; *Standard Quimica De Venazuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 204 (D.P.R. 1999).

2. A motion for reconsideration "must clearly establish either ***a manifest error of law or fact*** or must present newly discovered evidence." *Rosenzwieg v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (emphasis added). Luby's avers that the Court clearly erred by denying its Motion for Summary Judgment and by basing its ruling on analysis that does not comport with relevant legal authority applicable to the issues in this lawsuit.

***The Court's Ruling and Analysis***

3. On October 1, 2008, this Court issued an order denying Defendant's Motion for Summary Judgment. Defendant Luby's, however, finds it essential to request that this Court reconsider its ruling and the analysis upon which the ruling is based in this matter. Luby's would respectfully submit to this Court that its analysis does not comport with relevant legal authority applicable to the issues presented herein and this underlying analysis will greatly affect the discovery and evidentiary focus of the parties as this matter moves forward.

4. As accurately stated by this Court, it is Luby's contention in this case that its "service attendants" are members of an occupation equivalent to the occupation termed by the Department of Labor in its field handbook as "busboys/girls (server helpers)." As such, Luby's contends that its service attendants ("server helpers") are in an occupation universally "recognized as falling within the eligible category" for inclusion in a mandatory tip pooling arrangement. *See* Department of Labor, Field Operations Handbook 30d04(a) (June 30, 2000) ("Handbook"). This universal acceptance has been established not only by the Department of Labor, but also by all judicial authority considering this issue since the tip wage was instituted.

5. In support of its contention, Luby's presented evidence in the form of expert witness affidavits and deposition testimony, as well as an affidavit from Luby's Director of Operational Development, John O'Leary, and a Luby's service attendant who has been employed

2

by Luby's from the beginning of Mr. Plewinski's employment through the present. (Court Doc. Nos. 18-3, 33-2, 33-4, 33-5) Luby's also presented demonstrative evidence in the form of a video reflecting the duties performed by Luby's service attendants. (Court Doc. No. 43)

6. Plaintiffs, on the other hand, contend that Luby's service attendants are in fact appropriately categorized as members of occupations which have historically been held ineligible to participate in a mandatory tip pooling arrangement (e.g., janitors or dishwashers). Plaintiffs present as their sole support of this contention, the affidavits of named plaintiff, Daniel Plewinski, and other current and/or former Luby's servers.

7. Plaintiffs further contend that whether Luby's service attendants have sufficient customer interaction is an issue of consideration before this court when making its determination regarding whether they are appropriately included in Luby's mandatory tip pooling arrangement. Plaintiff's presented as legal authority supporting this contention, the recent ruling from this Southern District of Texas, in *Roussell v. Brinker International, Inc.*, 2008 WL 2714079 (S.D. Tex. July 9, 2008).

8. In the Court's order denying Defendant's Motion for Summary Judgment, this Court correctly states that "[i]n general, an employee's classification is based on how that employee spends the majority of his or her time. An employee who spends "a substantial amount of time (in excess of 20 percent)" doing a non-tipped occupation should not be considered a tipped employee, at least for the time spent doing the non-tipped work." *See* Court's Order [Doc 52], p. 4. Plaintiffs, however, present no evidence in response to Defendant's Motion for Summary Judgment that would support a finding that Luby's service attendants spend in excess of 20 percent of their time doing a non-tipped occupation. Indeed, Plaintiff's vague assertions within affidavits from servers can constitute no credible evidence that Luby's service attendants

spend time working in a non-tipped occupation. The non-moving party may not defeat summary judgment by relying on conclusory allegations, improbable inferences and unsupported speculation. *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-87 (1986).

9. This court's order, however, goes on to state that "[i]n deciding whether an employee may be included in a tip pool, the Court considers the overall nature of the employee's duties *as well as the level of interaction that employee has with customers.*" [emphasis added]. *See* Court's Order [Doc 52], p. 4, citing *Roussell v. Brinker Int'l, supra*. This finding inaccurately applies the court's reasoning in *Roussell* and wholly abandons the Department of Labor's safe harbor provisions which establish "busboy/girls (server helper)" as within an occupation appropriately included in a mandatory tip pooling arrangement regardless of customer interaction. *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663, at 670-71 (N.D. Tex. 2007) (While the court considered whether "expediters" were properly included within a tip pool even though they lacked customer interaction, it made it clear that there was no such requirement for "busboys.") Universally, if an employee is a member of the "busboy/girl (server helper)" occupation, customer interaction is not a factor. *See Roussell*, 2008 WL 2714079, at *10 (finding employees eligible to participate in a mandatory tip pool even if they have only minimal customer interaction, as long as their primary duties entail important customer service functions. (i.e. "functions that are more like those of … busboys/girls …")) Thus, it is incumbent upon this court to determine whether Luby's "service attendant's" fall within the occupation of "busboy/girl (server helper)" before determining whether customer interaction shall be a relevant factor in this case. This court's order seems to skip past the question of whether Luby's "service

4

attendants" duties are primarily those of "busboy/girls (server helper)" and automatically requires a showing of significant customer interaction. This court's order, in applying case authority such as *Wajcman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741 (S.D. Fla. Mar. 20, 2008) and *Townsend v. BG-Meridian, Inc.,* No. Civ-04-1162-F, 2005 WL 2978899 (W.D. Okla. Nov. 7, 2005), as a basis for consideration of customer interaction, ignores a critical distinction between the case at bar and those cases. In all the cases discussed by this court where customer interaction was a factor, the occupations being considered did not involve one whose primary duties reflected those of a "busboy/girl (server helper)" or similarly recognized safe harbor occupations. More specifically, the cases cited by this court and Plaintiffs considering customer interaction to be a critical factor looked at occupations not falling within the safe harbor created by the Department of Labor and the courts, including "1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls (server helpers); and 5) service bartenders." *See* Handbook, 30d04(a). In a situation where the subject employee's duties primarily fall within one of these occupations, customer interaction is not a critical consideration. *See Roussell*, 2008 WL 2714079, at * 10.  It is Defendant's concern that to require such interaction in cases involving these occupations, this court is effectively overturning established authority on which employers such as Luby's have long relied. If it is this court's intention to abandon this historic safe harbor, such a finding should not be applied in this case wherein Luby's appropriately relied on such an historic principal. This new requirement should be applied to matters of future concern, rather than retroactively applied.  Clearly, Defendant does not believe it was this Court's intention to erase this safe harbor and require an additional burden for occupations falling within those enumerated above. Thus, reconsideration of the analysis underlying the order requiring interaction is hereby requested.

### *Roussell v. Brinker International, Inc. Critically Differs from Case at Bar*

10.     Even the facts underlying the court's decision in *Roussell* are critically different from those presented by the case at bar. Again, the *Roussell* case, as with the others considering customer interaction as a critical factor to determining whether an employee may appropriately be included in a mandatory tip pooling arrangement, was looking at an occupation <u>not</u> within those established by the DOL and the courts to historically be appropriately included. The *Roussell* case, while establishing a standard for consideration of customer interaction, dealt with "quality assurance" employees, who performed certain functions traditionally performed by kitchen workers. These employees, because their occupation does not fall within the established safe harbor occupations, i.e., "1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls (server helpers); and 5) service bartenders," must show sufficient customer interaction. The *Roussell* court, however, while finding customer interaction critical to the determination of whether "quality assurance" employees should be included in a pooling arrangement, set out a standard for analyzing when "customer interaction" is an appropriate consideration. This standard, however, falls in line with the historically established safe harbor for occupations such as "busboys/girls (server helpers)" and confirms that when considering such occupations, customer interaction is not a critical factor for a finding regarding proper inclusion in a mandatory tip pool.

11.     The *Roussell* court found that employees may be eligible to participate in a mandatory tip pool even if they have only minimal customer interaction, as long as their primary duties entail important customer service functions, i.e., "1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls (server helpers); and 5) service bartenders," *See Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079, at * 10 (S.D. Tex. Jul. 9,

2008). The court's analysis in the *Roussell* case simply sets out an analysis that embraces this already accepted standard. Customer interaction is not a critical factor for an occupation whose primary duties are like those of busboys/girls (server helpers).

12.     Thus, this Court's first level of analysis must be to determine simply whether Luby's "service attendants" duties are primarily those of busboys/girls (server helpers) without regard to their level of customer interaction. If Luby's service attendant's primary duties are those of busboys/girls (server helpers), customer interaction is not a critical factor for the courts consideration in determining their appropriate inclusion in a valid tip pooling arrangement.

13.     This Court's order has effectively melded the issue of customer interaction into the determination of whether Luby's service attendants primary duties are those of "busboys/girls (server helpers)" and this adds another level of scrutiny not required of such occupations. Indeed, it is Luby's contention that every duty performed by Luby's service attendants appropriately falls within the duties of "busboys/girls (server helpers)."[1] And while in a cafeteria setting this *essentially* "busboy/girl (server helper)" occupation is truncated due to the very nature of the establishment, all the duties of Luby's service attendants fall within the known functions associated with this occupation. Luby's service attendants are in fact "busboys/girls (server helpers) as gauged by every duty they perform.

14.     This Court has stated that the duties of Luby's service attendants, such as moving dishes from the dish return room to the dish room, are activities more like that of dishwashers because no customer interaction is involved[2]. *See* Court's Order [Doc 52], p. 5 - 6.  However,

---

[1] Additionally, contrary to Plaintiff's unsupported assertion to the contrary, the duties performed by Luby's service attendants do not overlap into the duties of non-service employees such as dishwashers or janitors. Plaintiffs falsely infers in their Supplemental Brief Regarding *Roussell v. Brinker International, Inc.* that Luby's expert [whom Plaintiff's seek to exclude] conceded in his testimony that these occupations might overlap at Luby's.  Mr. Barth testimony makes no such concession or inference.

[2] It must be noted, however, that no evidence has been presented by Plaintiffs of the duties commonly associated with dishwashers, including evidence that dishwashers typically enter the dining room to remove dishes.

Luby's service attendants' duties cannot become associated with those of a dishwasher merely by virtue of their lack of customer interaction. This, again, changes a long history of findings by the Department of Labor and the courts that such interaction is not critical to such a determination. Additionally, Luby's has presented ample expert testimony that such duties do, in fact, represent those duties commonly associated with busboys/girls (server helpers). *See* Doc. Nos. 18-3 and 33-2, Barth Affidavits. Further still, Plaintiffs, having presented no credible evidence to the contrary, cannot claim a material issue of fact on this issue.

15. This Court also stated that if service attendants enter the dining room to remove dishes from bus stations, rather than from the tables, no customer interaction is involved, and thus, this activity is more like that of a dishwasher. *See* Court's Order [Doc 52], p. 6. This statement again, is predicated on the notion that customer interaction is a critical factor in the determination with whether Luby's service attendants are in fact "busboys/girls (server helpers)." This statement is contrary to the established standard. This determination should be solely based on the duties of Luby's service attendants, not the customer interaction involved in the execution of those duties.

***Busboy/girl (Server Helper) Defined By Department of Labor***

16. To assist this Court in determining whether the primary duties of Luby's service attendants are equivalent to those of a "busboy/girl (server helper)" Luby's has provided expert witness affidavits and testimony. It is additionally instructive, however, to review the Department of Labor's definition of this occupation. When the Department of Labor creates a test to interpret its regulations, the Secretary's interpretation is controlling unless plainly erroneous or inconsistent with the regulation. *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905,

137 L.Ed.2d 79 (1997). A review of the Department of Labor's Dictionary of Occupational Titles (4th Edition), Revised 1991, states the duties of a bus person are as follows:

> Performs any combination of following duties to facilitate food service: Carries dirty dishes from dining room to kitchen. Wipes table tops and chairs, using damp cloth. Replaces soiled table linens and sets tables with silverware and glassware. Replenishes supply of clean linens, silverware, glassware, and dishes in dining room. Supplies service bar with food, such as soups, salads, and desserts. Serves ice water and butter to patrons. Cleans and polishes glass shelves and doors of service bars and equipment, such as coffee urns and cream and milk dispensers. Makes coffee and fills fruit juice dispensers. May sweep and mop floors. May transfer food and dishes between floors of establishment, using dumbwaiter, and be designated Dumbwaiter Operator.

U.S. Department of Labor's Dictionary of Occupational Titles (4th Edition), Revised 1991. *See* Ex. A, p. 4. While the Department of Labor's Dictionary of Occupational Titles has been replaced by the O*Net, this definition reflects the DOL's position regarding what combination of duties constitute the occupation of "busboy/girl (server helper)." If must be noted from this definition, contrary to this Court's order, carrying dirty dishes from the dining room to the kitchen is a duty of a bus person without regard to customer interaction. Further still, upon review of the O*Net, [online resource that has replaced the Dictionary of Occupational Titles], the *core* [i.e., primary] duties of the "busboy/girl (server helper)" occupation are listed based on frequency, relevance and importance[3]. *See* Ex. A, p. 5 - 16. The *core* duties of a bus person, as listed in the Department of Labor's O*Net, are as follows:

1. Wipe tables and seats with dampened cloths, and replace dirty tablecloths.
2. Set tables with clean linens, condiments, and other supplies.
3. Scrape and stack dirty dishes, and carry dishes and other tableware to kitchens for cleaning.
4. Clean up spilled food, drink and broken dishes, and remove empty bottles and trash.

---

[3] While the O*Net references this occupation as "Dining Room and Cafeteria Attendants and Bartender Helpers," this occupation is clearly intended the equivalent of the "busboy/girl (server helper)" occupation. Indeed, a "[s]ample of reported job titles" reflects this occupation otherwise referred to as, busser, bus boy, bus person, and bus girl. *See* Ex. A, attached.

9

    5.       Perform serving, cleaning, and stocking duties in establishments such as cafeterias or dining rooms in order to facilitate customer service.
    6.       Maintain adequate supplies of items such as clean linens, silverware, glassware, dishes, and trays.
    7.       Serve ice water, coffee, rolls, and butter to patrons.
    8.       Fill beverage and ice dispensers.
    9.       Stock cabinets and serving areas with condiments, and refill condiment containers as necessary.
    10.      Locate items requested by customers.

*Id*. Interestingly, performing cleaning duties [i.e., cleaning restrooms] "in cafeterias or dining rooms in order to facilitate customer service" is included as a *core* duty for a bus person. Again, as in the Dictionary of Occupational Titles, other primary/core duties of a bus person listed on the O*Net are "scrap[ing] and stacking dirty dishes, and carrying dishes and other tableware to kitchens for cleaning." Further still, upon review of the O*Net, the occupation of a "dishwasher" does not include as a core, primary or supplemental duty the carrying of dishes to the kitchen. *See* Ex. A, p. 13 - 16. A review of the occupation of busboy/girl and dishwasher reflect that Luby's service attendants are equivalent to bus persons, rather than dishwashers. Luby's service attendants have no duties equivalent to those of dishwasher. In turn, all of the duties performed by Luby's service attendants are those common to bus person.

    17.      A review of the listing of duties for Luby's service attendants in its published job description during the full period relevant to this lawsuit reflects their general duties to be as follows:

    a.       Assists Waitstaff with bussing and cleaning of tables, chairs and floors as well as emptying bus stations maintaining dish return room throughout the meal.

    b       This includes pre-bussing when requested and bussing tables after the guest leaves. Bussing the tables includes clearing all used items, cleaning and sanitizing, cleaning chairs, high chairs, and booster chairs, surrounding floor and replacing table top items in a uniform fashion.

    c.    Assist the Waitstaff with the removal of buss carts, deposit full tubs in dish return area and return empty carts to the stations.

    d.    Roll silverware as needed.

    e.    Assist in ensuring a clean environment by routinely monitoring the dining room floor and guest rest rooms.

    f.    Assist in the set up and maintenance of drink stations.

    g.    Assist wait staff in separating and rolling silverware and maintaining silverware rolling station.

    h.    Clean customer rest rooms to "Rest Room Cleaning Procedure" standards.

    i.    Update marquee daily to manager's specifications.

    j.    Clean, organize, and maintain dish return room.

    k.    Assist management in anyway that is conducive to the efficient operation of the front of house.

*See* Doc. Nos. 18-3 and 18-4, p. 4 – 5. With the exception of the duty to "update marquee daily to manager's specifications," every listed job duty of a Luby's service attendant falls within the *core* duties listed in the Department of Labor's description of a bus person. *Id.*; *see also,* Ex. A. Surely, it cannot be argued that updating the marquee daily would account for more than 20 percent of a service attendant's job duties.

    18.    Every primary function that a Luby's "service attendant" performs is a *core* function that a "busboy/girl (server helper)" traditionally performs. Indeed, Luby's service attendants do not perform all of the functions that a "busboy/girl (server helper)" traditionally performs. However, the ultimate question the Court must decide in this case is, *without regard to customer interaction*, whether under the facts above, Luby's service attendants can appropriately be considered members of the occupation "busboy/girl (server helper)." A review of the facts in this case will show that this question must be answered in the affirmative.

WHEREFORE, Defendant Luby's, Inc. respectfully requests that this Court reconsider its prior ruling in this matter and grant Luby's Motion for Summary Judgment and dismiss all claims asserted by Plaintiff with prejudice and tax costs against Plaintiff. In the alternative, Luby's respectfully requests that this Court reconsider the underlying analysis of its prior ruling and issue a new ruling comporting with the relevant legal authority as stated herein above. Defendant requests any further relief to which it is entitled.

Respectfully submitted,

GORDON & REES, LLP

*s/Terrence B. Robinson*

Terrence Robinson, Attorney-in-Charge
State Bar No. 17112900
Heidi Gumienny
State Bar No. 24036696
1900 West Loop South, Suit 1000
Houston, Texas 77027
Telephone: (713) 961-3366
Facsimile: (713) 961-3938
Email: trobinson@gordonrees.com
Email: hgumienny@gordonrees.com

ATTORNEYS FOR DEFENDANT
LUBY'S, INC. D/B/A LUBY'S

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply was served upon the attorneys of record for Plaintiff, via electronic delivery, on this 24th day of October, 2008.

*s/Terrence B. Robinson*

Terrence B. Robinson