UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PLEWINSKI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-07-3529 |
| | § | |
| LUBY'S INC; dba LUBY'S, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

### I. Introduction

Pending before the Court is the defendant, Luby's Inc.'s ("Luby's") motion for decertification (Docket Entry No. 128). The plaintiffs, Daniel Plewinski and other similarly situated parties (collectively, "Plewinski" or "the plaintiffs") submitted a response to this motion (Docket Entry No. 152) and Luby's filed a reply in support of its motion (Docket Entry No. 153). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby denies Luby's motion.

### II. Factual Background

The pertinent facts in this dispute are set forth in the Court's earlier memorandum opinion and order denying Luby's motion for summary judgment. (Docket Entry No. 52).

### III. Contentions

#### A. The Defendant's Contentions

Luby's maintains that decertification of the present collective action is appropriate. On this point, it states that the plaintiffs are not similarly situated and have not been subjected to a single policy that violates the FLSA. These assertions are premised upon Luby's position that, due to differences in working environments, any resolution of the present claims necessarily

requires highly individualized findings (as opposed to class wide determinations). Further, Luby's maintains that, in the presence of a collective action, it will not be able to pursue its individualized defenses. Lastly, collective resolution of this case will lead to significant judicial inefficiency, states Luby's.

### B. The Plaintiffs' Contentions

Plewinski argues that decertification of the present class is inappropriate because the present claims can be resolved on a collective basis. He premises this statement on assertions that Luby's engaged in a unified scheme that violated the FLSA with regard to all of the plaintiffs and that the plaintiffs are similarly situated with regard to their employment conditions. Further, Plewinski disputes Luby's description of the present burdens of proof, the applicable legal standards and the "20% rule." He also states that Luby's present contentions are in conflict with its original positions and are inconsistent with the purpose of the FLSA. Lastly, Plewinski asserts that a refusal to decertify this class will not preclude Luby's from proffering a legitimate defense, lead to unfair/improper procedural issues or require resolution of novel claims on a collective basis.

### IV. Standard of Review

"The FLSA is a remedial statute which protects employees . . . by guaranteeing them such things as a fair minimum wage and overtime pay." *Powell v. Tucson Air Museum Found. of Pima County*, 771 F.2d 1309, 1312 (9th Cir. 1985) (Nelson, J. dissenting) (citing 29 U.S.C. § 206(a))." The statute "allows multiple employees to bring [a collective action] against an employer on behalf of themselves and other employees similarly situated . . . ." *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 481 (5th Cir. 2001). On this topic, United States District Judge Lee H. Rosenthal (S.D. Tex.) has recently stated:

> Certification of a [FLSA] collective action suit is generally analyzed under a two step process. The first step is the conditional certification, or "notice stage," in which the district court decides whether to issue notice to potential class members. *See* [*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)) (abrogated on other grounds)] . . . .
>
> If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id*. If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214; [*Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at 3 (E.D. La. July 2, 2004).] "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also* [*Barron v. Henry County School Sys.*, 242 F.Supp.2d 1096, 1104 (M.D. Ala. 2003)] ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."). If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiff proceeds with individual claims. *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005).
>
> This case has reached the second stage and [the defendant] has moved to decertify the class. At this stage, the plaintiffs have the burden to prove that they are similarly situated. *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (citations omitted). With discovery materials available to aid the court's analysis, the "similarly situated" inquiry is more searching than it was at the conditional certification stage. *Id*. But "[w]hile the plaintiffs must show that they are 'similarly situated,' this does not mean they must establish that they are 'identically situated.'" *Id*. The analysis turns on: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural concerns." *Id*. (quoting *Basco*, 2004 WL 1497709, at *4). "The three factors are not mutually exclusive and there is considerable overlap among them." *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008).

*Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 930–31 (S.D. Tex. 2009).

**V. Analysis & Discussion**

"The FLSA, which requires employers to pay a minimum wage, was first enacted in 1938 . . . ." *Alden v. Maine*, 527 U.S. 706, 808 (1999) (Souter, J. dissenting). The statute "authorizes employers to take a partial credit against the minimum wage they are required to pay for amounts presumably received in tips by their tipped employees." *Brennan v. Nat'l Hotel Co.*, 476 F.2d 17, 18 (5th Cir. 1973) (footnote omitted). On this issue, 29 U.S.C. § 203 provides, in pertinent part, that:

> (m) . . . In determining the wage an employer is required [in compliance with minimum wage requirements] to pay a tipped employee [such as a waiter], the amount paid such employee by the employee's employer shall be an amount equal to—
>
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>>
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees *who customarily and regularly receive tips*.

(emphasis added).

Plewinski asserts that Luby's is in violation of the FLSA's minimum wage requirements because it "pays its servers at sub-minimum wage rates but does not adhere to the FLSA's 'tip credit' requirements." The parties do not disagree that Plewinski, as a waiter, was a tipped employee, but they do contest whether service attendants constitute "employees who customarily

and regularly receive tips," such that Plewinski could be required to share tips with them. On this issue, United States District Judge Keith P. Ellison has recently stated that:

> Neither the language of FLSA nor the relevant regulations provide much clear guidance regarding which employees or occupations may participate in mandatory tip pools or tip sharing arrangements . . . . Legislative history and the Department of Labor Field Operation Handbook provide some additional guidance, setting forth examples of the kinds of employees that may be included in a mandatory tip pool. In a report on the 1974 amendments to Section 203(m), the Senate Committee on Labor and Public Welfare explained:
>
>> Nor is the requirement that the tipped employee retain such employee's own tips intended to discourage the practice of pooling, splitting, or sharing tips with employees who customarily and regularly receive tips—e.g., waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc. On the other hand, the employer will lose the benefit of this exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips—e.g., janitors, dishwashers, chefs, laundry room attendants, etc.
>
> S. Rep. 93-690, at 43 (Feb. 22, 1974). The Department of Labor Field Operations Handbook echoes the Senate Report, stating that the following occupations have been recognized as eligible for participation in a tip splitting or pooling arrangement: "1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls (server helpers); 5) service bartenders." Dept. Labor Field Operations Handbook § 30d04(a). The Field Operations Handbook likewise adds that tipped employees may not be required to share tips "with employees who have not customarily and regularly participated in tip pooling arrangements," noting that the following "employee occupations" would not be eligible to participate: "1) Janitors; 2) Dishwashers; 3) Chefs or cooks; 4) Laundry room attendants."[1] *Id.* § 30d04(c). Neither the Senate Report nor the Department of Labor Handbook attempts to explain the commonalities between each group of employees.

*Roussell v. Brinker Intern., Inc.*, No. H-05-3733, 2008 WL 2714079, at *6–7 (S.D. Tex. 2008).

Luby's argues that its service attendants are—similar to waiters and busboys—"customarily and regularly" tipped (in contrast to employees that are not commonly tipped, such as dishwashers), and therefore its policy requiring waiters to share tips is legitimate. Moreover,

---

[1] The Handbook further clarifies that employees may share in tips even if they do not receive tips directly from customers. *Id*. § 30d04(a) ("It is not required that all employees who share in tips must themselves receive tips from customers."); *see also Marshall v. Krystal Co.*, 467 F. Supp. 9, 13 (E.D. Tenn. 1978).

with regard to the specific issue at bar, Luby's alleges that resolution of this conflict via a collective action is inappropriate. Accordingly, Luby's requests decertification of the plaintiffs' collective action. As described in the following subsections, the Court disagrees with Luby's multiple arguments on this issue.

### A. The Single Decision or Plan Requirement

"[C]ourts have held that putative class members must show they were affected by a common policy, plan, pattern or practice in order to proceed collectively under Section 216(b) of the FLSA." *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008) (citations omitted); *see also Roussell v. Brinker Intern., Inc.*, No. H-05-3733, 2008 WL 2714079, at *15 (S.D. Tex. July 9, 2008) (unreported opinion). On this issue, Luby's states, with citations omitted, that:

> Plaintiffs argue that they satisfy the FLSA's collective action requirements because Luby's requires tip sharing with service attendants. But just because there are some uniform aspects of a decision, policy, or plan does not end the inquiry— it begins it. Plaintiffs must show how liability of their claim can be determined on a class-wide basis. Courts hold that when the employment situations are widely disparate, aggregate adjudication is impermissible.

The Court disagrees. Luby's is conflating the common policy requirement with the (later addressed) similarly situated requirement. When viewed through the proper lens, Plewinski has satisfied his burden (regarding a common policy) by establishing that Luby's had a company-wide policy requiring waiters to pool tips with service attendants. Accordingly, decertification on this issue is inappropriate.

### B. Similarly Situated

As mentioned above, the plaintiffs must be similarly situated in order for a FLSA collective action to proceed. *See Bejil v. Ethicon, Inc.*, 269 F.3d 477, 481 (5th Cir. 2001). However, "[w]hile the plaintiffs must show that they are 'similarly situated,' this does not mean

they must establish they are 'identically situated.'" *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 279–81 (N.D. Tex. 2008) (citing *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *5 (E.D. La. July 2, 2004)). Pursuant to the logic set forth below, the Court finds that the plaintiffs have satisfied this burden.

### 1. The Service Attendants and the Similarly Situated Requirement

Earlier in this case, former Judge Kent stated that "[a]n employee who spends 'a substantial amount of time (in excess of 20 percent)' doing a nontipped occupation should not be considered a tipped employee, at least for the time spent doing the non-tipped work."[2] (Docket Entry No. 47) (quoting Department of Labor, Field Operations Handbook 30d00(e)). Premised upon this quotation, Plewinski argues that if a service attendant spends more than 20% of their time doing nontipped work, then that party cannot legitimately be included in tip sharing. This is incorrect. The Department of Labor provision cited by former Judge Kent states that if a party does non-tipped work for greater than 20% of their work-day, they cannot be treated as a tipped employee *for that portion of their work*.

Under this standard, if a waiter is required to share tips with a service attendant that works over 20% of their time in a nontipped capacity, a FLSA violation has occurred with regard to the hours that the service attendant was performing nontipped functions. Moreover, as a corollary to this standard, a service attendant's only pertinent attribute, for the purposes of the plaintiffs' standing in the present FLSA collective action, is whether they spend more than 20% of their time doing nontipped work. All other similarities or differences are superfluous.

Plewinski states that the evidence at bar establishes that, with regard to most Luby's locations, "at least one Service Attendant was present . . . who spent more than 20% of his/her time performing non-tipable duties in the dish return area." A review of the declarations of 35

---

[2] This standard is hereinafter referred to as the "20% rule."

Luby's managers establishes that this is, in significant part, correct. While Luby's service attendants may serve as busboys for a portion of their workday, the Court finds that (based on their nontipable work outside of the dining area) these parties satisfy the aforementioned 20% rule. Accordingly, with regard to the service attendants at each plaintiff's place of work, the Court finds the plaintiffs to be similarly situated.

On the contrary, Luby's argues that "plaintiffs are not 'similarly situated' because they are helped differently by different service attendants." To this end, it maintains that "job duties of the Luby's service attendants vary greatly from one service attendant to another," "the number of service attendants working varies from restaurant-to-restaurant" and "[s]ervice attendants spend different amounts of time performing different job responsibilities at different restaurants." Assuming, *arguendo*, the truth of these statements, the Court finds that, while these issues present some differences amongst the plaintiffs, class certification is not defeated because these arguments do not establish that the 20% rule is not satisfied. Moreover, many of these issues address the question of individual damages, as opposed to liability across the entire class. The fact that individualized findings regarding damages may be necessary does not require class decertification. *See Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *9 (S.D. Tex. May 28, 2008); *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 540 (S.D. Tex. 2008).

### 2. The Waiters and the Similarly Situated Requirement

Luby's presents three reasons why the current plaintiffs are not similarly situated (outside of any arguments pertaining to the attributes of service attendants). Specifically it recognizes that the plaintiffs work at different Luby's locations, are managed by different location managers, and do not share the exact same job responsibilities. The Court is not persuaded by Luby's position.

As recognized in the recent Southern District of Texas case, *Falcon v. Starbucks Corp.*, the fact that plaintiffs "worked at different stores under the supervision of different individuals" is not necessarily a reason to decertify a class, particularly where the plaintiffs "held the same job title and worked under the exact same job description and supervision hierarchy." 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008). This is exactly the scenario in the case at bar. Moreover, as was the case in *Falcon*, the plaintiffs have presented significant evidence that a FLSA violation may have occurred under a policy pertaining to all of the plaintiffs (see discussion in previous subsection). Accordingly, the Court finds that, with regard to their respective working conditions, the plaintiffs are similarly situated.

### C. Plaintiff Specific Defenses

On its next point of argument, Luby's asserts that "[t]his case should be decertified because Luby's has defenses that are plaintiff-specific." It presents multiple defenses including a limitations argument, various allegations that the plaintiffs did not inappropriately share tips with service attendants and arguments pertaining to good faith behavior by Luby's management. To the extent that any of these positions are valid—an issue that the Court does not presently pass judgment on—and necessitate semi-individualized findings, the Court is of the view that any required individual findings will be minimal and can be made at trial.

### D. Fairness and Procedural Considerations

Luby's next states that "[f]airness and procedural considerations mandate decertification in this case." To the extent that Luby's premises its argument on the assertion that individualized determinations are required in this case, the Court, as previously described, is not persuaded. Moreover, with regard to Luby's position that a collective action in the present case "would not save significant time or effort," the Court does not see an immediate connection

between Luby's position on efficient adjudication and fairness considerations. To the contrary, the Court agrees with the United States District Judge Nanette K. Laughrey's (W.D. Miss.) reasoning regarding the issue of fairness and decertification in a FLSA case:

> Even if [the defendant] convinced the Court that some differences in employee job settings and individual defenses weighed against class certification, fairness and procedural considerations would still justify collective treatment of the Plaintiffs' claims . . . . Adopting [the defendant's] position as to decertification may result in 743 individual trials, which is not efficient. While some subclasses may be necessary to maximize efficiency, separate trials is the worst possible outcome in terms of efficiency.
>
> At oral argument, [the defendant] argued that decertification would not bar individual Plaintiffs from bringing his or her individual claim, but the effect of decertification would be to place each opt-in Plaintiff back at square one without the benefit of pooled resources to resolve the common question of whether [the defendant] had a policy to deny overtime and minimum wage compensation. Such a result is antithetical to the policy behind collective actions under § 216(b) of the FLSA: allowing plaintiffs to vindicate their rights by "efficient resolution in one proceeding of common issues of law and fact" arising from the same improper practice. *See Hoffman-La Roche, Inc.*, 493 U.S. 165, 170 (1989); *see Glass v. IDS Fin. Servs. Inc.*, 778 F. Supp. 1029, 1081–82 (D. Minn. 1991).
>
> Finally, [the defendant's] evidence weighing in favor of decertification goes mostly to damages. The court may create damages subclasses if plaintiffs establish liability at trial. *See Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 434 n.3 (D. Kan. June 20, 2007) . . . . It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." [*Dove v. Coupe*, 759 F.2d 167, 174 (C.A.D.C. 1985).] Because there is a common question of whether [the defendant breached the FLSA,] decertification even on the issue of damages is not warranted at this time.

*Kautsch v. Premier Commc'ns*, No. 06-cv-04035-NKL, 2008 WL 294271, at *4 (W.D. Mo. Jan. 31, 2008). Therefore, the Court does not find that decertification is appropriate on this issue.

### E.  Novel Claims and Certification

Lastly, Luby's proffers that "[b]ecause there is no clear precedent available to the Court to analyze Plaintiffs' novel claim that a service attendant/busperson is not 'among employees who customarily and regularly receive tips,' the Court should refuse to issue final certification of

Plaintiffs' collective action." The Court is not persuaded. Initially, application of the Department of Labor's standard regarding who constitutes a tipped employee (the 20% rule) is not a novel issue. However, assuming *arguendo* that this issue is novel, the Court does not see how a collective action creates any impediment to resolution of this allegedly novel claim. Accordingly, this argument is not a legitimate grounds for decertification.

### VI. Conclusion

Based on the above, the Court hereby DENIES Luby's motion to decertify.

It is so **ORDERED.**

SIGNED at Houston, Texas this 21st day of April, 2010.

Kenneth M. Hoyt
United States District Judge